UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                          Chapter 7

   IRWIN SCHNEIDMILL,                              Case No.  22-71158-ast

                           Debtor.
-------------------------------------------------------------X
MARVIN SANDLER, MIMI BERMAN
SANDLER and MIMARV, INC. F/K/A
INDEPENDENT LIVING AIDS, INC.,

                           Plaintiffs,        Adv. Pro. No.: 22-_____-ast
      -against-

IRWIN SCHNEIDMILL,

                           Defendant.
-------------------------------------------------------------X

**VERIFIED ADVERSARY COMPLAINT**
**OBJECTING TO DISCHARGEABILITY OF DEBT**

       MARVIN SANDLER, MIMI BERMAN SANDLER AND MIMARV, INC. F/K/A

INDEPENDENT LIVING AIDS, INC. (collectively, "Plaintiffs"), by their attorneys, Forchelli

Deegan Terrana LLP, allege as follows against IRWIN SCHNEIDMILL ("Debtor"):

**Nature of the Action**

       1.     This adversary proceeding is brought under §§ 523(a)(2), (4), and (6) of Title 11

of the United States Code (the "Bankruptcy Code") for a judgment declaring that the Debtor's

debt to Plaintiffs is non-dischargeable.

       2.     Three months before the Debtor filed a voluntary petition in bankruptcy,

judgment was entered for Plaintiffs against Debtor and three companies he operated,

Independent Living Aids, LLC (a Delaware LLC) ("ILA – DE"), Independent Living Aids, LLC

(a New York LLC) ("ILA – NY") and Economic Solutions, Inc. (collectively, the "Judgment

Debtors") in the Supreme Court of the State of New York, County of New York, Index No. 652154/2013 (the "Supreme Court Action").

3.        Upon Plaintiffs' and Judgment Debtors' motions for summary judgment, Justice Andrea Masley issued a Decision and Order dated August 28, 2020 finding, *inter alia*, that Plaintiffs were entitled to summary judgment on their sixth cause of action against the Judgment Debtors for a fraudulent conveyance with respect to the sale of ILA – DE to ILA – NY for $1.00 (the "2020 Order"). A copy of the 2020 Order is annexed hereto as **Exhibit "1"**.

4.        Thereafter, Justice Masley held a multi-day trial and issued a Decision After Trial dated December 30, 2021 which ordered and adjudged that Plaintiffs "have judgment and recover on the sixth cause of action, jointly and severally against defendants Independent Living Aids, LLC (A Delaware LLC), Independent Living Aids, LLC (A New York LLC), Economic Solutions, Inc., and Irwin Schneidmill, in the amount of $1,906,000 with interest from June 1, 2012" (the "2021 Order"). The 2021 Order further ordered that Plaintiffs shall submit a proposed judgment in accordance with the 2021 Order. A copy of the 2021 Order is annexed hereto as **Exhibit "2"**.

5.        Per Justice Masley's 2021 Order, Plaintiffs submitted a proposed judgment with the language of the 2021 Order, and on February 15, 2022, judgment was entered in favor of Plaintiffs and against Independent Living Aids, LLC (A Delaware LLC), Independent Living Aids, LLC (A New York LLC), Economic Solutions, Inc., and Irwin Schneidmill for, *inter alia*, $3,572,522.85 (the "Judgment"). A copy of the Judgment is annexed hereto as **Exhibit "3"**.

6.        With respect to the sixth cause of action for a fraudulent conveyance, the Judgment imposed joint and several liability on each of Judgment Debtors, with pre-judgment and post-judgment interest from June 1, 2012, bringing the Judgment Debtor's total liability for a

fraudulent conveyance to $3,572,522.85 as of the date of the Judgment (February 15, 2022), and $3,655,327.08 as of the Debtor's bankruptcy filing (May 20, 2022).

7.      The debt from the Judgment should not be discharged. In the Supreme Court Action, in which Debtor participated and was represented, Justice Masley made detailed findings that the Judgment Debtors, including the Debtor, committed a fraudulent conveyance with respect to the sale of ILA – DE to ILA – NY for $1.00 under the Debtor and Creditor Law ("DCL") § 273, which left ILA – DE insolvent to pay its debt to Plaintiffs.

## Jurisdiction and Venue

8.      On May 20, 2022, Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United State Code, commencing this bankruptcy case.

9.      Jurisdiction exists over this proceeding under 28 U.S.C. §§ 157(a) and 1334. The statutory predicates for the relief sought herein in §§ 105(a) and 523 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7001. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J).

10.     Venue of this Court is proper based upon 28 U.S.C. § 1409(a). Plaintiffs and Debtor are individuals who reside, and at all relevant times have resided, in the State of New York. Plaintiffs reside in the County of New York, while Debtor resides in the County of Suffolk.

## Finding of Actual Fraud by the Supreme Court of New York

**I.      Finding that Judgment Debtors Are Liable to Plaintiffs for Fraudulent Conveyance**

11.     Marvin and Mimi Sandler (collectively, the "Sandlers") are the sole shareholders of Mimarv Inc., f/k/a Independent Living Aids, Inc ("ILA Inc.").

12.     The Debtor and Economic Solutions, Inc., among other entities, formed ILA – DE

for the purpose of purchasing ILA Inc.'s assets. On May 23, 2008, ILA Inc. and ILA – DE

executed an asset purchase agreement for the sale of ILA Inc.'s assets to ILA – DE for $8

million (the "APA"). *See* 2020 Order p. 3. Pursuant to the APA, no party could assign its rights,

interests or obligations under the APA without prior written approval of the other party. *See id.*,

pp. 5-6 (citing APA ¶ 10.2).

13.     At that same time, ILA Inc., ILA – DE and the Sandlers entered into a Consulting

Agreement pursuant to which the Sandlers would continue to advise ILA – DE on the operation

of the company in exchange for $2,424,000, to be paid in monthly installments over seven years.

*See id.*, pp. 3-4. If ILA – DE ever underwent a change in control, including sale of "all or

substantially [all] of the assets related to the Business", the Consulting Agreement's acceleration

clause would be triggered which provided for an automatic termination of the agreement and

payment of the remaining balance to the Sandlers at a discounted rate of 5% per annum. *See id.*,

p. 6 (quoting the Consulting Agreement ¶¶ 3(b) and 12).

14.     In order to pay the purchase price under the APA, ILA – DE took out a loan from

TD Bank. TD Bank required a $450,000 collateral for the loan (the "Collateral"), which the

Sandlers agreed to provide, reducing the purchase price received by the Sandlers at closing to

$7,550,000. It was the Sandlers understanding that the Collateral would be maintained by TD

Bank in a pledge account until satisfaction of the loan terms, at which point the Collateral would

be returned to the Sandlers. *See id.*, pp. 4-5.

15.     In or about 2011, ILA – DE experienced financial difficulties. As a result, ILA –

DE entered into a one-year extension on the loan with TD Bank and informed the Sandlers that

ILA – DE would cease payments under the Consulting Agreement as of January 2012. *See id.*, p. 7.

16.     In breach of the Consulting Agreement, ILA - DE ceased making payments under the Consulting Agreement in January 2012 and thus the Sandlers "received payments for only the first three years and eight months of the seven-year term". *Id.*, p. 8.

17.     The financial downturn continued into 2012 and eventually investors refused to further invest in ILA – DE. *See id.*, p. 8.

18.     Ultimately, the Debtor claimed that in an effort to save the business, and after consultation with his accountant, the ILA – DE members agreed to sell the company to Debtor under the newly formed ILA – NY, of which the Debtor was the sole member and President. *See id.*, pp. 8-9. On June 1, 2012, ILA – DE entered into an asset purchase agreement with ILA – NY wherein ILA – NY purchased all of ILA – DE's assets for $1.00 (the "ILA Transaction"). *See id.*, p. 9.

19.     As part of the ILA Transaction, ILA – NY also took over the loan with TD Bank, including Plaintiffs' Collateral being held in the pledge account. *Id.* On September 18, 2012, ILA – NY entered into a modification agreement with TD Bank pursuant to which the Debtor provided a personal guarantee as additional security for the loan, and agreed to release Plaintiffs' Collateral to TD Bank to be applied against the original loan. *See id.* pp. 9-10.

20.     The Sandlers maintain that the Debtor did not inform them of the ILA Transaction until July 6, 2012, at which time the Debtor also falsely claimed that TD Bank confiscated the Collateral because ILA – DE defaulted on the loan. *Id.*, p. 11.

21.     On June 18, 2013, Plaintiffs commenced the Supreme Court Action.

22.     On their motion for summary judgment, Plaintiffs argued that the ILA Transaction was a fraudulent conveyance because, *inter alia*, the ILA Transaction left ILA – DE insolvent, the ILA Transaction was not for fair consideration, and the ILA Transaction involved an ILA -DE insider, the Debtor, which rendered the conveyance presumptively in bad faith. *Id.* p. 36.

23.     Justice Masley found that Plaintiffs "established prima facie entitlement to summary judgment on their DCL § 273 claim" (*id.*, p. 39) and granted summary judgment in favor of Plaintiffs on the sixth cause of action against the Judgment Debtors (*id.*, p. 47).

**II.     The Supreme Court Action Inquest.**

24.     After the Court's findings in the 2020 Order, the Court held a trial on damages for, *inter alia* the sixth cause of action for fraudulent conveyance with respect to the ILA Transaction pursuant to DCL against the Judgment Debtors.

25.     According to the Debtor and his accountant, Mitchell Sorkin ("Sorkin") the ILA Transaction was fair because ILA – DE's net worth at the time of the ILA Transaction was negative as the liabilities of the company exceeded the tangible assets. This conclusion was reached after two major adjustments were made to ILA – DE's balance sheet: (i) a goodwill write off of $3,558,652.83; and (ii) a barter credits write off of $228,000 (collectively, the "Write Offs"). *See* 2021 Order, p. 6.

26.     After the inquest, the Supreme Court found that the Write Offs were "improper and thus [ILA – DE] had a positive net value which was far greater than $1[.]" *See id.*, pp. 7 & 8. Further, the goodwill write off was inconsistent with multiple forms submitted with respect to the ILA Transaction, including ILA-DE's Form 8594 which reported a goodwill value of $1.1 million, the NYS Transfer Form which reported a goodwill value of $800,000, NY State Form

6

AU-196-10, which listed the sales price of the ILA Transaction at $2.8 million and a U.S. tax

form which listed the sale price for the ILA Transaction as $3.5 million. *See id.*, pp. 7 and 9-10.

Similarly, the barter credits write off was based on the Debtor's assertion that the barter credits

had expired and were worthless, while the Debtor later admitted that the barter credits had value

and in fact did not expire until August of 2013, well after the ILA Transaction occurred. *See id.*

p. 8.

        27.    The Supreme Court found that Plaintiffs' witness was "credible, reliable, clear

and helpful" and "credited his explanations because he has significant experience with the

purchase and sale of businesses." *Id.*, p. 9. Justice Masley gave "little weight to Sorkin's

testimony concerning the [Write Offs]" because "Sorkin's lifelong friendship with [the Debtor]

raises a red flag" and "Sorkin also had a vested interest in legitimizing the [ILA Transaction]

Sorkin crafted in May 2012." *Id.*, p. 8. Further the Court wrote that Sorkin's emails at or around

the time of the ILA Transaction demonstrated that "the [Write Offs] were ***for the purpose of

creating insolvency to benefit [the Judgment Debtors] and get out from under the debt owed to

plaintiffs***." *Id.*, p. 9 (emphasis supplied).

        28.    Given all of the above, Justice Masley held that Plaintiffs were entitled to

judgment on their sixth cause of action against the Judgment Debtors, jointly and severally, for

$3,572,522.85 due to the fact that the ILA Transaction constituted a fraudulent conveyance.

### First Claim for Relief
### Denial of Discharge of Debt Pursuant to Bankruptcy Code § 523(a)(2)(A)

        29.    In relevant part, 11 U.S.C. § 523(a)(2)(A) provides as follows:

    (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of
        this title does not discharge an individual debtor from any debt—

        (2) for money, property, services, or an extension, renewal, or refinancing
            of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

30.    As set forth above, it was determined in the Supreme Court Action that it was by actual fraud that the Debtor avoided paying the Judgment Debtors' debt to Plaintiffs by fraudulently conveying ILA – DE to ILA – NY for $1.00, leaving ILA – DE insolvent to pay its debt to Plaintiffs.

31.    Justice Masley found that the ILA Transaction was fraudulent because "plaintiffs established that [ILA – DE]'s net value on May 30, 2012 was $2,665,981.75, contrary to defendants' position that [ILA – DE] has a negative net worth and far exceeding the $1 ILA – NY paid [ILA -DE] on June 1, 2012." 2021 Order, p. 4. The Court held that the evidence established that the Write Offs were improper and thus the ILA Transaction constituted a fraudulent conveyance pursuant to DCL § 273. *See id.*, pp. 7-8; *see also* 2020 Order, pp. 38-41.

32.    Accordingly, Debtor's obligations to Plaintiffs are non-dischargeable under Bankruptcy Code § 523(a)(2)(A). *See also Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 356 (2016) (holding that the term "actual fraud" as stated in Bankruptcy Code § 523(a)(2)(A) encompasses fraudulent conveyances that can be effected without false representation, and holding debtor's principal liable for fraud for the conveyance of assets of a debtor company, that could have been used to pay the debtor company's debts, to other entities he controlled).

## Second Claim for Relief
### Denial of Discharge of Debt Pursuant to Bankruptcy Code § 523(a)(4)

33.    In relevant part, 11 U.S.C. § 523(a)(4) provides as follows:

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

34.    The Debtor was acting in a fiduciary capacity when he fraudulently conveyed ILA – DE to ILA – NY for $1 and forfeited the Sandlers' Collateral to TD Bank for the benefit of ILA – NY, of which he was the president and sole member.

35.    Further, as set forth above, the Debtor embezzled the Plaintiffs' Collateral when he wrongfully forfeited the Collateral to TD Bank with the intent to deprive the rightful owners of the Collateral (Plaintiffs) of those funds for benefit ILA – NY without Plaintiffs permission or the authority to do so.

36.    Accordingly, Debtor's obligations to Plaintiffs are non-dischargeable under Bankruptcy Code § 523(a)(4).

### Third Claim for Relief
### Denial of Discharge of Debt Pursuant to Bankruptcy Code § 523(a)(6)

37.    In relevant part, 11 U.S.C. § 523(a)(6) provides as follows:

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

38.    The foregoing facts found in the Supreme Court Action establish that the Debtor willfully and maliciously injured Plaintiffs and their property by "purpose[fully] creating insolvency to benefit [the Judgment Debtors] and get out from under the debt owed to plaintiffs." 2021 Order, p. 9.

39.    Accordingly, Debtor's obligations to Plaintiffs are non-dischargeable under Bankruptcy Code § 523(a)(6).

**WHEREFORE**, Plaintiffs demand Judgment against the Debtor as follows:

(a)     On Plaintiffs' First Claim for Relief, an Order denying discharge of Debtor's debt

to Plaintiffs pursuant to Bankruptcy Code § 523(a)(2)(A);

(b)     On Plaintiffs' Second Claim for Relief, an Order denying discharge of Debtor's

debt to Plaintiffs pursuant to Bankruptcy Code § 523(a)(6); and

(c)     Such other and further relief as this Court deems just and proper.

Dated:  Uniondale, New York
        August 10, 2022

Respectfully submitted,

FORCHELLI DEEGAN TERRANA LLP

By:     */s/ Gerard R. Luckman*
        GERARD R. LUCKMAN
        *Attorneys for Plaintiffs*
        333 Earle Ovington Boulevard, Suite 1010
        Uniondale, New York 11553
        (516) 248-1700

## VERIFICATION

STATE OF ___New York___ )

COUNTY OF ___New York___ )ss:

Marvin Sandler being duly sworn, deposes and says: I am one of the plaintiffs in the within adversary proceeding and Chief Executive Officer of Mimarv, Inc. I have read the annexed **Verified Adversary Complaint** and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
Marvin Sandler

Sworn to before me this
_10_ day of August, 2022

_____
Notary Public

11