SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART IAS MOTION 48EFM

-----------------------------------------------------------------------------X

MARVIN SANDLER, MIMI SANDLER, and MIMARV, INC. f/k/a INDEPENDENT LIVING AIDS, INC.,

Plaintiffs,

- v -

INDEPENDENT LIVING AIDS LLC (A NEW YORK LLC), INDEPENDENT LIVING AIDS LLC (A DELAWARE LLC), ECONOMIC SOLUTIONS, INC., and IRWIN SCHNEIDMILL,

Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652154/2013 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 007 008 009 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 007) 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 402, 403, 404, 407, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 470, 473, 475, 476, 477, 478, 479, 480, 481

were read on this motion to/for         JUDGMENT - SUMMARY       .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 405, 408, 409, 410, 411, 412, 413, 414, 471, 474, 482, 483, 484, 485, 488

were read on this motion to/for      PARTIAL SUMMARY JUDGMENT     .

The following e-filed documents, listed by NYSCEF document number (Motion 009) 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 406, 469, 472

were read on this motion to/for         STRIKE JURY DEMAND        .

**Masley, J.:**

This action arises from the sale of plaintiff Mimarv, Inc. f/k/a Independent Living

Aids, Inc. (ILA Inc.) to defendant Independent Living Aids, LLC (a Delaware LLC) (ILA

DE) and defendants' alleged attempt to deprive the owners of ILA Inc., plaintiffs Marvin

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 1 of 48

Sandler and Mimi Berman Sandler (together, the Sandlers), of the benefits of that transaction.

By decision and order dated May 6, 2016, Justice Oing dismissed the third, fourth, fifth and eleventh causes of action of the 12-count amended complaint (NYSCEF Doc No. 239). By order dated October 24, 2019, this court adopted the parties' stipulation of partial discontinuance dated October 22, 2019, discontinuing this action with prejudice against defendants RSS Adventure Capital, LLC (RSS), The Chow Marital Share Trust, as successor to The Chow-Speech Trust (Chow Trust), Matthew Sheppard and John Radziwill. In addition, the court severed and continued the action against the remaining defendants, Independent Living Aids, LLC ( a New York LLC) (ILA NY), ILA DE, Economic Solutions, Inc. (Economic Solutions) and Irwin Schneidmill (Schneidmill, together with Economic Solutions, Individual Defendants), and ordered that the caption be amended to reflect the discontinuance. (NYSCEF 492.)

Plaintiffs assert the following causes of action against the remaining defendants: breach of contract (first and second causes of action); fraudulent conveyance pursuant Debtor and Creditor Law (DCL) §§ 273, 274, 275 and 276 (sixth through ninth causes of action, respectively); attorneys' fees pursuant to DCL § 276-a (tenth cause of action);[1]

---

[1] Effective April 4, 2020, the state legislature amended the DCL and repealed the provisions relating to fraudulent conveyances at issues in this action (L 2019, ch 580). The amendment does "not apply to a transfer made or obligation incurred before [the] effective date, nor . . . to a right of action that . . . accrued before [the] effective date" (id. § 7). Accordingly, all references to the DCL in this decision are to the statute as it existed at the time that these claims accrued (see Aguaiza v Vantage Props., LLC, 69 AD3d 422, 423 [1st Dept 2010] ["a new statute is to be applied prospectively, and will not be given retroactive construction unless an intention to make it so can be deduced from its wording"]).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 2 of 48

2 of 48

and breach of the implied covenant of good faith and fair dealing (twelfth cause of action).

Plaintiffs now move for summary judgment (motion sequence number 007) on all remaining claims. Defendants likewise move for summary judgment (motion sequence number 008) dismissing the amended complaint in its entirety as against ILA NY, Economic Solutions and Schneidmill and for partial summary judgment dismissing the DCL claims against ILA DE. In addition, defendants move to strike plaintiffs' jury demand pursuant to CPLR 4101 and/or 4102 (motion sequence number 009).

I.    Background and Procedural History

The Sandlers are the sole shareholders of ILA Inc., a New York corporation that sold devices to those with sight and hearing impairments (NYSCEF 85, amended complaint, ¶¶ 4, 22, 24). Schneidmill, the Chow Trust, RSS[2] and Economic Solutions, which is wholly owned by Schneidmill, formed ILA DE for the purpose of acquiring ILA Inc.'s assets (id. ¶¶ 7-9, 14, 32; NYSCEF Doc. No. 241, answer to amended complaint, ¶¶ 7-9, 14, 32; NYSCEF Doc. No. 430, Schneidmill 10/17/14 aff, ¶ 50). Schneidmill and Sheppard served as ILA DE's officers, with Schneidmill serving as President (NYSCEF 385, ILA DE's operating agreement, exhibit B).

On May 23, 2008, ILA Inc. entered into an Asset Purchase Agreement (APA) for the sale of its assets to ILA DE for $8 million (NYSCEF 347, APA, § 2.2). Contemporaneously with the APA, ILA DE, ILA Inc. and the Sandlers entered into a

---

[2] Sheppard formed RSS and is its manager (NYSCEF 354, Sheppard tr at 30-32). Sheppard, through his membership in another limited liability company, and John Radziwill, individually, are members in RS Holdings LLC, which, in turn, is a member of RSS (id. at 28-31).

652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 3 of 48
Motion No.  007 008 009

3 of 48

Consulting Agreement, providing that the Sandlers would continue to advise ILA DE on the operation of the business in exchange for $2,424,000, paid in monthly installments over a seven-year period (NYSCEF 348, Consulting Agreement, ¶¶ 2, 3).[3] Plaintiffs allege that the actual purchase price for ILA Inc.'s assets was $10 million and that they agreed to accept $2 million (plus interest) in the form of monthly consulting fees to provide defendants with a tax benefit (NYSCEF 85, amended complaint ¶¶ 31, 35-36).

TD Banknorth, N.A. (TD Bank) provided ILA DE with financing for the transaction; $2 million as a revolving loan (Revolving Loan) and $4 million as a term loan (Term Loan, together with the Revolving Loan, Loan) (NYSCEF 349, Commercial Loan and Security Agreement, ¶¶ 1.2 [a], [b]). ILA DE used the entirety of the Term Loan and $1.2 million of the Revolving Loan, in addition to cash contributions from its members ($2 million from RSS and $1 million from the Chow Trust), to pay the purchase price (id. ¶ 2.13; NYSCEF Doc. No. 350, Flow of Funds Memorandum). The remainder of the Revolving Loan was intended for use as working capital (NYSCEF 349, Commercial Loan and Security Agreement ¶ 2.13 [b]).

TD Bank required $450,000 as collateral for the Loan (Collateral). Plaintiffs agreed to provide the Collateral, reducing the total cash they received at the closing to $7,550,000. (NYSCEF Doc Nos. 85, amended complaint ¶¶ 39, 115; NYSCEF Doc. No. 317, Pledge Agreement; 350). Pursuant to the Pledge Agreement and the Commercial Loan and Security Agreement between TD Bank and ILA DE, both dated May 23, 2008, TD Bank would retain the Collateral in a pledge account (Pledge

---

[3] The Consulting Agreement provides for monthly payments of: $18,000 in year one; $20,000 in year two; $24,000 in year three; $28,000 in year four; $36,000 in year five; $38,000 in year six; and $38,000 in year 7 (NYSCEF 348, ¶ 3 and exhibit B).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 4 of 48
Motion No. 007 008 009

4 of 48

Account) until the earlier of: ILA DE achieving four consecutive quarters of revenue

sufficient to service 1.4 times its obligations or ILA DE paying the Loan in full (NYSCEF

Doc Nos. 349, Commercial Loan and Security Agreement ¶ 2.9; NYSCEF Doc. No. 317,

Pledge Agreement ¶¶ 1, 7). Upon satisfaction of the Loan terms, the Pledge Agreement

directed TD Bank to deliver the entire balance of the Pledge Account to the Sandlers

(NYSCEF 317, Pledge Agreement ¶ 7). According to Sandler, "Sheppard . . .

represented that [the] $450,000 would be secure and held as collateral by it's [sic]

lender for a maximum of four years" (NYSCEF 403, Sandler aff ¶ 26).

With respect to the financing of the transaction, the APA provides as follows:

> "<u>Financing Cooperation</u>. In connection with obtaining any
> financing to be consummated contemporaneously with or at
> or after the Closing in respect of the transactions
> contemplated by this Agreement (the 'Financing'), the Seller
> [ILA Inc.] and the Stockholders [the Sandlers] agree that
> they shall provide Four Hundred Fifty Thousand Dollars
> ($450,000) of cash collateral required by Buyer's lender or
> lenders. . . . The Parties hereto further agree and
> acknowledge that Buyer shall have no liability for any loss,
> forfeiture, seizure, withholding or final disposition of any cash
> collateral provided by Seller or any Stockholder in
> connection with the Financing regardless of whether such
> collateral is lost, seized, forfeited or withheld, in whole or in
> part, provided that Buyer shall have used its best efforts in
> good faith to fulfill its obligations in connection with the
> Financing. Buyer hereby acknowledges that the cash
> collateral provided by the Seller and/or the Stockholders
> shall be released pursuant to the terms and conditions of the
> documentation evidencing the Financing and upon such
> release, first the Seller shall be entitled to the cash collateral
> it provided, and any interest or earnings thereon, and
> second, the Buyer shall be entitled to the balance thereof
> and any interest or earnings thereon, if any"

(NYSCEF 347, APA ¶ 6.4). In another pertinent part, the APA states that "[n]o Party

may assign either this Agreement or any of its rights, interests, or obligations hereunder

**652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**                    **Page 5 of 48**
**Motion No. 007 008 009**

5 of 48

without the prior written approval of the other Party" (*id.* ¶ 10.2). Also relevant here is the Consulting Agreement's acceleration clause, which provides for automatic termination of the agreement and payment of the remaining balance, discounted at a rate of 5% per annum, "[i]f [ILA DE] undergoes a Change in Control at any time during the Term" (NYSCEF 348, Consulting Agreement ¶ 3 [b]). "Change in Control" is defined as, among other things, the sale of "all or substantially [all] of the assets related to the Business" (*id.* ¶ 12).

By 2011, ILA DE ran into financial difficulties. In an email dated April 22, 2011, Schneidmill informed members that, in the first quarter of 2011, ILA DE had experienced a 25% drop in sales from the previous year and that ILA DE "require[d] an additional investment or loan to keep the operation running smoothly and maintain appropriate inventory levels" (NYSCEF 359, Email). Sheppard forwarded this email to the Sandlers on April 25, 2011 (*id.*). An independent auditor's draft report, dated August 12, 2012, of ILA DE's financial statements for 2010 and 2011 found that "[f]or the years ended December 31, 2011 the Company ha[d] a working capital deficiency of $1,181,495" (NYSCEF 321, Draft Report at 13, note K).

In response, RSS and the Chow Trust allegedly made a series of loans to ILA DE (see *id.* at 14, note L [noting that "[t]wo members of the Company have loaned [it] $715,001"]; NYSCEF 430, Schneidmill aff ¶¶ 12-14 [Schneidmill avers that RSS invested approximately $700,000 and the Chow Trust $316,666 in additional funds]; NYSCEF Doc. No. 378, QuickBooks Ledgers [ILA DE's QuickBooks ledgers as of March 31, 2012, showing 2011 and 2012 wires from RS Holding LLC, totaling $733,334, and the Chow Trust, totaling $316,667]). In addition, in April of 2011, Sheppard, on

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 6 of 48

behalf of ILA DE, obtained a one-year extension of the Term Loan with TD Bank (NYSCEF 354, Sheppard tr at 111-113). During his deposition, Sheppard explained that "[t]he company didn't have the cash to continue the principal payments" and by "spread[ing] it over an extra year [ILA DE] could continue to make the payments and not default" (id. at 126:5-14; at 127:14-20). He did not obtain plaintiffs' written consent to the extension (id. at 113-114). According to Sandler, defendants did not inform plaintiffs of the extension until June 10, 2011 (NYSCEF 356, Sandler tr at 310-313).

ILA DE continued to suffer losses. By email dated December 14, 2011, Sheppard informed plaintiffs that ILA DE would cease payments under the Consulting Agreement as of January 2012. He proposed an alternate payment plan for the balance owed on the Consulting Agreement, offering to pay 50% of the cashflow remaining after Loan payments. He also promised to use his best efforts to secure the release of the Collateral. (NYSCEF 363, 12/14 Email.) Sheppard followed up with emails dated January 6 and 11, 2012, in which he explained that: TD Bank refused to release the Collateral on a piecemeal basis as the Loan was paid down; "it [was] possible, but not certain, that it might agree to release the funds in April 2013 once the acquisition loan [was] paid off"; ILA DE required additional contributions from its members in order to pay off the Loan; and ILA DE members were unwilling to invest more cash into the company (NYSCEF 364, January 2012 Emails). He then proposed the following: ILA DE members would contribute sufficient funds to continue Loan payments until April 2012, when the outstanding balance would equal the funds in the Pledge Account; TD Bank would then apply those funds to the balance of the loan; ILA DE would commit to repay the $450,000, with interest, at a rate of 100% of ILA DE's cash flow each month;

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 7 of 48
Motion No. 007 008 009

7 of 48

and, once that was paid off, ILA DE would use 50% of its monthly cash flow to pay the balance due under the Consulting Agreement (*id.*). Sandler turned down these proposals as "offering [him] 50 percent of nothing," since "[defendants] weren't making a profit" (NYSCEF 356, Sandler tr at 327:18-20).

ILA DE made its last payment under the Consulting Agreement in January 2012 (*id.* at 328). According to plaintiffs, they "received payments for only the first three years and eight months of the seven-year term" of the Consulting Agreement, for a total of $968,000 ($216,000 for year one, $240,000 for year two, $288,000 for year three and $224,000 for year four), with $1,456,000 remaining unpaid (NYSCEF 85, amended complaint ¶¶ 127-129). During his deposition, Schneidmill confirmed that approximately $1.4 million remained unpaid (NYSCEF 483, Schneidmill tr at 95-96).

As ILA DE's sales continued to decline in 2012, defendants kept plaintiffs apprised of its condition (*see* NYSCEF 365 [email from Sheppard to Sandler, dated April 24, 2012, containing "sales by month for ILA from May 2008 to March 2012" to be discussed in a call the following day]). According to defendants, in April 2012, they offered to "effectively" give the business back to the Sandlers (*see* NYSCEF Doc Nos. 354, Sheppard tr at 197:20; NYSCEF Doc. No. 483 at 93). Sandler states that defendants asked him to come back to run the business only. In any event, Sandler declined (NYSCEF 356 Schneidmill tr at 334-336).

According to Sheppard, sometime in 2012, the Chow Trust and RSS refused to invest further (NYSCEF 354, Sheppard tr at 194-195). He states that, because Schneidmill wanted to try to save the business, after consultation with their accountant, Mitchell Sorkin (Sorkin), ILA DE members agreed to sell it to Schneidmill (*id.* at 213-

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 8 of 48

8 of 48

216). In an email dated May 4, 2012, Sorkin advised that, in order for ILA DE members to obtain ordinary, rather than capital, loss treatment on their taxes, they could either sell ILA DE to a third party or liquidate it (NYSCEF 366, 5/4 Email). He also advised that, in order for members to take an ordinary loss, while permitting Schneidmill to continue the business with new investors, Schneidmill should form a new entity, taking over the "ILA" name, and ILA DE should sell its assets to this entity for $1 (*id.*).

ILA NY was formed on May 31, 2012, with Schneidmill as its sole member and president (NYSCEF Doc Nos. 367, NYS Secretary of State Webpage; NYSCEF Doc. No. 483, Schneidmill tr at 86-87). Pursuant to an Asset Purchase Agreement dated June 1, 2012 (Second APA), ILA NY agreed to acquire all of ILA DE's assets for $1 and "the assumption of the all [sic] of Seller's liabilities as of May 31, 2012" with "no excluded liabilities" (NYSCEF 318, Second APA ¶¶ 1.2, 1.4).

As part of its assumption of ILA DE's liabilities, ILA NY took over the loan with TD Bank, including the Collateral. In pertinent part, the Second APA provides that ILA DE "has no claim to the funds contained in the Pledge Account . . . established pursuant to the Pledge Agreement between Seller and TD Banknorth, N.A. dated May 23, 2008" (*id.* ¶ 2.26). Pursuant to an Assumption Agreement dated September 18, 2012, TD Bank permitted ILA NY to take over ILA DE's debt and agreed to ILA DE's "sale of the Collateral to [ILA NY] pursuant to the [Second] APA" (NYSCEF 325, Assumption Agreement at 1-2). In addition, ILA NY entered into a Modification Agreement with TD Bank, dated September 18, 2012, pursuant to which Schneidmill provided a personal guarantee of $335,000 as additional security for the Term Loan and ILA NY agreed to

**652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**				**Page 9 of 48**
  **Motion No.  007 008 009**

9 of 48

release the Pledge Account to TD Bank, to be applied against the Loan (NYSCEF 441, Modification Agreement ¶ 7.)

In connection with the Second APA, ILA NY entered into an Agreement for Distribution of Profits of [ILA NY] (Distribution Agreement) with RSS, the Chow Trust, Economic Solutions and Schneidmill (NYSCEF 319, Distribution Agreement). According to Sheppard, the "agreement was designed to provide a means for reimbursing ILA [DE's] entity members for funds that they had invested in ILA [DE]," without "releas[ing] ILA NY from its obligation to pay any sums of money owed as consulting fees to [Sandler]" (NYSCEF 320, Schneidmill 12/3/13 aff, ¶ 9).

The Distribution Agreement provided for a distribution of 50% of "any net increase in cash" to RSS and 25% to the Chow Trust (NYSCEF 319, Distribution Agreement ¶ 5). It also required Schneidmill to "operate ILA in such a manner as to maximize its profitability" and to "use ILA to pay only such operating expenses and capital expenditures as shall be incurred or required in the ordinary course of business" (id. ¶ 2). In addition, it prohibited him from "increas[ing] his compensation or that of any person related to him . . . by more than 5% per annum" and required Schneidmill to obtain RSS's consent prior to: hiring any person related to him, acquiring assets or admitting new members. Schneidmill also had to provide RSS and the Chow Trust with quarterly profit and loss statements and year-end financial statements (id. ¶¶ 2, 3). In the event that Schneidmill sold ILA NY, the Distribution Agreement provided for the proceeds to be distributed in the same manner as the net increases in cash (id. ¶ 7).

The parties dispute whether defendants informed plaintiffs of these transactions beforehand. According to Schneidmill, in May 2012, he informed Marvin Sandler of his

intention to form a new entity to take over ILA DE's assets and offered the Sandlers a

20% interest in it, in satisfaction of the Collateral and the money owed under the

Consulting Agreement (NYSCEF 381, Schneidmill 12/18/2014 aff, ¶¶ 11-13).

Schneidmill states that Sandler initially agreed to take a 20% interest in ILA NY, but

then changed his mind (NYSCEF 483, Schneidmill tr at 109-110). Schneidmill claims

that when he asked if this meant that Sandler was going to stop the transaction, Sandler

responded: "I don't want any more money. I have enough money. I'm not going to

come after you. We're done" (*id.* at 110:3-9). Schneidmill admits that he did not obtain

a written release from Sandler (*id.* at 107, 113-114), but states that, in reliance on this

conversation, he removed the $1.4 million from his list of liabilities and it did not appear

on ILA NY's books and records (*id.* at 120).

According to Marvin Sandler, Schneidmill did not inform him of the sale to ILA NY

until July 6, 2012, at which time he also allegedly told Sandler "that ILA Delaware had

defaulted on its acquisition loan and [that TD Bank] had confiscated [the] $450,000"

(NYSCEF 403, Sandler aff ¶¶ 53-57). Sandler states that it was at this time, after the

conveyance to ILA NY, that they discussed him taking a 20% interest in ILA NY in return

for forgiveness of all remaining debt (NYSCEF 356, Sandler tr at 342-343).

After Sandler declined to take an interest in ILA NY, he offered to take ILA DE's

URLs in satisfaction of the debt (*id.* at 345). By email dated August 7, 2012,

Schneidmill suggested that their attorneys should discuss the possibility of a release in

exchange for the URLs (NYSCEF 451, 8/7 Email). However, nothing ever came of

these discussions (NYSCEF 356, Sandler tr at 351).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 11 of 48

11 of 48

In an email to TD Bank's attorney, dated August 9, 2012, defendants' attorney

stated, in pertinent part, as follows:

> "Marvin Sandler and Mimi Berman Sandler are not part of
> ILA NY. There was a discussion along those lines but in the
> end it was not structured that way. Nevertheless, the
> $450,000 collateral will be retained by the bank. The
> remaining obligations under the Consulting Agreement will
> be waived by Marvin and Mimi"

(NYSCEF 410, 8/9 Email).

It is undisputed that, after the conveyance, ILA NY continued ILA DE's business,

using the same suppliers, offices, address, telephone numbers and customers as ILA

DE had used (see NYSCEF Doc. No. 403, Sandler aff ¶¶ 60,61; NYSCEF Doc. No. 354,

Sheppard tr at 165; NYSCEF Doc. No. 483, Schneidmill tr at 72, 129-131). From

December 2012 through November 2013, Schneidmill, on behalf of ILA NY, obtained

additional loans from an individual named Louis Orloff (see NYSCEF 373, Promissory

Notes [a series of promissory notes executed by Schneidmill on behalf of ILA NY,

promising to repay approximately $870,000 with interest of 10% per annum]).[4]

Sometime in 2013, when ILA NY could no longer meet its obligations under the Loan,

TD Bank sold the note to a limited liability company that Orloff owned, which then

foreclosed on the Loan and sold off ILA NY's assets (see NYSCEF Doc Nos. 362,

Casale tr, at 72-73; NYSCEF Doc. No. 483 Schneidmill tr at 333-339, 341). According

---

[4] The court notes that Marvin Sandler's reply affidavit in support of plaintiffs' motion for
summary judgment contains multiple allegations of wrongdoing, including against Orloff,
which Sandler makes for the first time on reply (see NYSCEF 480, Sandler aff ¶¶ 17-
21). This is an improper use of a reply. (see JPMorgan Chase Bank, N.A. v Luxor
Capital, LLC, 101 AD3d 575, 576 [1st Dept 2012]).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                Page 12 of 48
Motion No. 007 008 009

12 of 48

to Fred Casale, who was TD Bank's loan workout officer handling the transaction, pursuant to the terms of the sale, TD Bank could not sue Schneidmill under his personal guarantee for the deficiency, but the bank applied what remained of the Collateral to the principal (NYSCEF 362 Casale tr at 6, 77-79). Schneidmill states that both ILA DE and ILA NY are presently defunct, but that neither has been dissolved (NYSCEF 483 Schneidmill tr at 66-67).

Plaintiffs commenced this action on June 18, 2013. They served their first Notice to Admit on March 11, 2014, to which defendants responded on March 27, 2014 (NYSCEF Doc Nos. 460, 461). On December 30, 2014, plaintiffs served their Second Notice to Admit (NYSCEF 462). On January 15, 2015, defendants' attorney responded with a good faith letter, explaining defendants' objections to the Second Notice to Admit—including that the notice impermissibly sought issues of ultimate fact and interpretations of law and contained vague statements— and advising plaintiffs' attorney that defendants would seek a protective order, unless plaintiffs withdrew or substantially revised the Second Notice to Admit (NYSCEF 463). Plaintiffs then served a Revised Second Notice to Admit (NYSCEF 464). The attorneys exchanged emails, in which defendants' attorney expressed his view that the revised notice suffered from the same defects as the original and suggested that plaintiffs' attorney withdraw the Revised Second Notice to Admit and ask his questions during depositions (NYSCEF 465, Attorney Emails). During these exchanges, the attorneys also discussed issues regarding depositions and document production (*id.*). Defendants never served a response to the Revised Second Notice to Admit.

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 13 of 48

13 of 48

After the court dismissed some of plaintiffs' causes of action without prejudice,

plaintiffs filed an amended complaint on August 25, 2014, asserting 12 causes of action

against ILA DE, its members and ILA NY. Defendants moved to dismiss the amended

complaint. By decision and order dated May 6, 2016, the court granted the motion in

part and denied it in part (NYSCEF 239, Decision and Order [Seq 003]). The following

causes of actions remain: breach of the APA (first cause of action); breach of the

Consulting Agreement (second cause of action); fraudulent conveyance pursuant to

DCL §§ 273-276 (sixth through ninth causes of action, respectively); attorneys' fees

pursuant to DCL § 276-a (tenth cause of action); and breach of the implied covenant of

good faith and fair dealing (twelfth cause of action).

On August 30, 2018, plaintiffs filed their note of issue (NOI), demanding a trial by

jury of all issues (NYSCEF 302, NOI).

By order dated October 24, 2019, this court adopted the parties' stipulation of

discontinuance, dated October 22, 2019, discontinuing this action with prejudice against

all defendants with the exception of ILA DE, ILA NY, Schneidmill and Economic

Solutions (NYSCEF 492, Order).

II.    Analysis

A. Revised Second Notice to Admit

As a preliminary matter, the parties dispute whether defendants had an obligation

to respond to the Revised Second Notice to Admit and whether the court should deem

admitted the facts as stated therein. Defendants' attorney states that, in connection

with the resolution of related discovery disputes, plaintiffs' attorney "verbally informed

[him] that he would not require the Defendants to respond to Plaintiffs' Revised Second

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 14 of 48
Motion No.  007 008 009

Notice to Admit" (NYSCEF 415, Reisman aff in opposition to plaintiff's motion, ¶ 15). The parties "did not confirm this in writing" (*id.*). In addition, defendants' attorney contends that "the Revised Second Notice to Admit, like its predecessors, consisted of improper and vague questions which, in many instances, asked the Defendants to admit 'facts' that were, in essence fundamental and material issues or contested ultimate facts, conclusions of law and/or which had and have been answered during in Defendants' responses to the 104 questions long First Notice to Admit, in depositions, in affidavits, in pleadings and in motion practice" (*id.* ¶ 16). Plaintiffs' attorney counters that he: (1) has no recollection of verbally withdrawing the Revised Second Notice to Admit; (2) doubts that he would ever do so without confirming it in writing; and (3) has no record of such a withdrawal (NYSCEF 475, Hubell reply aff ¶¶ 8-10).

CPLR 3123 requires a written response to a Notice to Admit within 20 days from service of such notice. Failure to respond results in "[e]ach of the matters of which an admission is requested [to] be deemed admitted" (CPLR 3123 [a]). However, the requested admissions must be as to matters that the requesting party "reasonably believes there can be no substantial dispute [about] at the trial . . . " (*id.*).

> "[The notice to admit] is designed to remove from the case those uncontested matters which would merely present a time-consuming burden at trial . . . . [It] cannot be utilized to seek admissions of material issues or ultimate or conclusory facts, interpretations of law, questions already admitted in responsive pleadings, or questions clearly irrelevant to the case"

(*Villa v New York City Hous. Auth.*, 107 AD2d 619, 620 [1st Dept 1985] [citations omitted].

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 15 of 48

Case 8-22-08661 ast   Doc 1-1   Filed 08/11/22   Entered 08/11/22 18:02:20   INDEX NO. 652154/2013

Where the notice to admit improperly demands admission as to disputed matters, there is "no obligation to furnish admissions in response" (*Meadowbrook-Richman, Inc. v Cicchiello*, 273 AD2d 6, 6 [1st Dept 2000]; *see MTGLQ Invs., LP v Collado*, 183 AD3d 414, 415 [1st Dept 2020] [finding that the plaintiff was entitled to summary judgment, despite the plaintiff's failure to respond the defendant's notice to admit, "because that discovery device [was] not properly used"]; *Echevarria v 158th St. Riverside Dr. Hous. Co., Inc.*, 113 AD3d 500, 502 [1st Dept 2014] [stating that, where notice to admit sought admission of contested issues and ultimate facts in the case, the requesting party was not entitled to have those issues deemed admitted]).

Here, the Revised Second Notice to Admit contains 73 items. Some of the items appear appropriate, such as request as to "the genuineness of [] papers or documents" (CPLR 3123 [a]; *e.g.* NYSCEF 464, items 32, 37).[5] However, it also contains patently improper requests for "admission of fundamental and material issues or ultimate facts" (*MTGLQ Invs.*, 183 AD3d at 415 [internal quotation marks and citations omitted]), such as the request for admission that "[t]he conveyance of all assets to ILA New York for $1 was not an arms-length transaction" (NYSCEF 464, item 16). Plaintiffs "could not have reasonably believed that there was no substantial dispute regarding th[is] issue[]" (*see also Fetahu v New Jersey Tr. Corp.*, 167 AD3d 514, 516 [1st Dept 2018]). The Revised Second Notice to Admit contains numerous impermissible requests for admission that do not require a response (*see MTGLQ Invs., LP*, 183 AD3d at 415; *Echevarria*, 113 AD3d at 50; *Meadowbrook-Richman, Inc.*, 273 AD2d at 6), the court

---

[5] The parties do not address their arguments to the specific items of the Revised Second Notice to Admit. The court, therefore, merely notes that some items "appear" to be appropriate, without ruling that they are, in fact, so.

declines to deem as true the facts as stated in the Revised Second Notice to Admit (see
*Kimmel v Paul, Weiss, Rifkind, Wharton & Garrison*, 214 AD2d 453, 453-454 [1st Dept
1995] [finding that a notice to admit that "predominantly [sought] admissions as to
material and ultimate issues" was properly stricken, even though it contained some
proper requests, because "it is not the court's obligation to prune those pre-litigation
devices"]).

B. Motions for Summary Judgment (Motion Sequence Numbers 007 and 008)

Plaintiffs contend that the Individual Defendants stripped ILA DE of its assets,
rendering it unable to perform its contractual obligations to plaintiffs, all the while
continuing the same business under ILA NY. Plaintiffs now seek summary judgment
against all defendants for breach of the APA and the Consulting Agreement (first and
second causes of action, respectively), breach of the implied covenant of good faith and
fair dealing (twelfth cause of action) and fraudulent conveyance, with attorneys' fees,
pursuant to the DCL§§ 273-276-a (sixth through tenth causes of action).

Defendants counter that plaintiffs' submissions in support of their motion consist
of conclusory and unsubstantiated assertions and that the motion should be denied. In
addition, they contend that the evidence demonstrates that they acted in good faith and
that they are, therefore, entitled to summary judgment dismissing all claims against all
defendants, with the exception of the second cause of action for breach of the
Consulting Agreement as against ILA DE. While defendants' notice of motion seeks
partial summary judgment for ILA DE, dismissing the DCL claims only, defendants urge
the court to search the record and grant summary judgment dismissing the first and
twelfth causes of action as well (NYSCEF Doc Nos. 468 at 23; 484 at 12).

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 17 of 48

17 of 48

Pursuant to CPLR 3212 (b), "[t]o obtain summary judgment, the movant 'must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Madeline D'Anthony Enters., Inc. v Sokolowsky*, 101 AD3d 606, 607 [1st Dept 2012], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "A [movant] cannot satisfy its burden merely by pointing out gaps in the [opponent's] case" (*Sabalza v Salgado*, 85 AD3d 436, 437-438 [1st Dept 2011]) or by relying on "[a] conclusory affidavit or an affidavit by an individual without personal knowledge of the facts" (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005] [citations omitted]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez,* 68 NY2d at 324). Once the movant satisfies its burden, the opposing party must "produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*id.*).

Summary judgment "should not be granted where there is any doubt as to the existence of [material and triable issues of fact], or where the issue is arguable" (*Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441 [1968] [internal quotation marks and citation omitted]). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment . . ." (*Asabor v Archdiocese of N.Y.*, 102 AD3d 524, 527 [1st Dept 2013] [internal quotation marks and citation omitted]).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 18 of 48

18 of 48

1. <u>Breach of the APA and the Consulting Agreement (First and Second Causes of Action)</u>

Plaintiffs contend that defendants breached the APA's best efforts clause when they: (1) renegotiated the Term Loan with TD Bank, decreasing the monthly payments by half and doubling the remaining loan term; and (2) transferred the Loan and Collateral from ILA DE to ILA NY, making repayment of the Loan by ILA DE impossible. In addition, plaintiffs contend that they are entitled to summary judgment for breach of the Consulting Agreement, because: (1) they received payment for only the first three years and eight months of the seven-year contract; and (2) the transfer of ILA DE's assets to ILA NY triggered the Consulting Agreement's acceleration clause, terminating the agreement and requiring immediate payment of the remaining balance.

Defendants counter that summary judgment should be granted dismissing the first cause of action against ILA DE, because the APA's best efforts clause contains no objective criteria against which defendants' efforts can be measured and is, therefore, unenforceable. In addition, they contend that plaintiffs failed to demonstrate their prima facie entitlement to summary judgment on the second cause of action, because they did not establish that they performed under the Consulting Agreement.

"To make a prima facie case on [their] breach of contract claim, plaintiff[s] [must] demonstrate the existence of a contract, the plaintiff[s'] performance thereunder, the defendant[s'] breach thereof, and resulting damages" (*Belle Light. LLC v Artisan Constr. Partners*, 178 AD3d 605, 606 [1st Dept 2019] [internal quotation marks and citation omitted]).

In interpreting a contract, the court must consider the parties' intentions, "[t]he best evidence of [which] . . . is what they say in their writing" (*Banco Espírito Santo, S.A.*

**652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**
**Motion No.  007 008 009**

Page 19 of 48

19 of 48

*v Concessionária Do Rodoanel Oeste S.A.*, 100 AD3d 100, 106 [1st Dept 2012] [internal quotation marks and citation omitted]). "[W]ords of ordinary import [are to be construed] with their usual and commonly understood meaning, and . . . dictionary definitions [are] useful guideposts in determining the meaning of a word or phrase" (*Yaniveth R. v LTD Realty Co.*, 27 NY3d 186, 192 [2016] [internal quotation marks and citation omitted]).

"A best efforts clause imposes an obligation to act with good faith in light of one's own capabilities. Best efforts requires that [parties] pursue all reasonable methods . . . and whether such obligation has been fulfilled will almost invariably . . . involve a question of fact" (*Maestro W. Chelsea SPE LLC v Pradera Realty Inc.*, 38 Misc 3d 522, 530 [Sup Ct, NY County 2012] [internal quotation marks and citation omitted]). Where the contract expresses the parties' intention to be bound, "a finding that a contract fails for indefiniteness is at best a last resort" (*Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 114 [1st Dept 1998] [internal quotation marks and citation omitted] [explaining that the absence of a "clear set of guidelines against which to measure [a] party's 'best efforts,'" did not render a contract unenforceable])."

Here, there is a clear intention to be bound and "the nature of the parties' respective obligations is reasonably certain so as to enable the court to discern a breach and fashion an appropriate remedy" (*Non-Linear Trading Co.*, 243 AD2d at 114). The APA states that ILA DE will not be liable for "any loss, forfeiture, seizure, withholding or final disposition" of the Collateral, "regardless of whether such collateral is lost, seized, forfeited or withheld, in whole or in part, provided that [ILA DE] shall have used its best efforts in good faith to fulfill its obligations in connection with the Financing" (NYSCEF 347, APA ¶ 6.4). In other words, in consideration for the Collateral, ILA DE

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                     Page 20 of 48
Motion No.  007 008 009

20 of 48

was obligated to "pursue all reasonable methods" to fulfil its obligations in connection with the Loan (i.e. avoid default), "with good faith in light of [its] own capabilities" (*Maestro W. Chelsea SPE LLC*, 38 Misc 3d at 530 [internal quotation marks and citation omitted]).

Whether ILA DE breached that obligation, when it reduced the monthly payments by negotiating an extension on the Term Loan or, on the contrary, fulfilled that obligation by "pursu[ing] all reasonable methods" to avoid defaulting on the Loan, presents a question of fact that may not be resolved on a motion for summary judgment (*id.*; *see also Asabor*, 102 AD3d at 527). However, to the extent the claim is premised on ILA DE's assignment of the Loan and the Collateral to ILA NY, plaintiffs have established their entitlement to summary judgment. The best efforts clause protects ILA DE from liability should the Collateral be "lost, seized, forfeited or withheld" (NYSCEF 347, APA ¶ 6.4). ILA DE did not lose or forfeit the Collateral. It assigned the Collateral to ILA NY (see NYSCEF Doc Nos. 318, Second APA ¶ 2.26; 325 at 1, recital E). This was not a loss the parties contemplated under the APA's best efforts clause. Even assuming that the sale to ILA NY preserved all of ILA DE's obligations to plaintiffs,[6] ILA DE cannot be said "to [have] act[ed] with good faith in light of [its] capabilities" (*Maestro W. Chelsea SPE LLC*, 38 Misc 3d at 530) because, in assigning the Collateral, it neglected to first obtain plaintiffs' written consent, in breach of paragraph 10.2 of the APA (NYSCEF 347,

---

[6] Defendants' contention that the conveyance in no way impaired plaintiffs' rights to repayment is belied by the Modification Agreement, pursuant to which ILA NY released the Pledge Account to TD Bank, to be applied against the Loan (NYSCEF 441, ¶ 7).

**652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**
**Motion No.  007 008 009**

Page 21 of 48

21 of 48

APA ¶ 10.2 [prohibiting assignment of the APA "or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party]).

To the extent defendants rely on *Timberline Dev. v Kronman* (263 AD2d 175 [1st Dept 2000]) to argue that the second cause of action should be dismissed, because the best efforts clause does not contain "objective criteria against which a party's efforts can be measured" and is, therefore, "on its face unenforceable "(NYSCEF 468, Memorandum in Opposition at 23-24), defendants fail to provide, nor could the court locate, any authority requiring such criteria to be in writing.

For the foregoing reasons, to the extent plaintiffs seek summary judgment on the first cause of action based on the assignment of the Collateral to ILA NY, the motion is granted as against ILA DE.

Plaintiffs have also demonstrated their prima facie entitlement to summary judgment on the second cause of action. The Consulting Agreement provides for payment of $2,424,000 in monthly installments over a seven-year period, beginning on June 5, 2008 (NYSCEF 348, Consulting Agreement ¶ 3 [a]). ILA DE ceased making payments under the Consulting Agreement in January 2012 (*see* NYSCEF 363, 12/14 Email), leaving a balance of approximately $1.4 million unpaid (NYSCEF 483, Schneidmill tr at 95-96). In addition, when ILA DE sold "all or substantially [all] of the assets related to the Business" to ILA NY, it triggered the Consulting Agreement's acceleration clause, which automatically terminated the agreement and required immediate payment of the remaining balance, reduced for interest (NYSCEF 348,

Consulting Agreement ¶ 3 [b]).[7]  None of these matters are in dispute.  Therefore, plaintiffs have demonstrated their prima facie entitlement to summary judgment on the second cause of action as against ILA DE.

Defendants attempt to raise an issue of fact by claiming that the Sandlers did not perform under the Consulting Agreement.  Specifically, defendants point to the contract's "Services" provision, which required the Sandlers to provide up to 180 days of services in the first year of the agreement and up to 90 days per year thereafter (*id.*, ¶ 2).  According to defendants, the Sandlers performed "minimal services."  The key phrase here is "up to" and what is absent from defendants' claim of nonperformance is a clear statement that ILA DE required plaintiffs to perform and that plaintiffs refused (*see Belle Light. LLC v Artisan Constr. Partners LLC*, 178 AD3d 605, 606 [1st Dept 2019] [finding that defendant's "conclusory assertion that plaintiff breached the contracts [was] insufficient to defeat summary judgment as [the defendant] [did] not specify how plaintiff failed to perform"]).[8]

Defendants' claim of nonperformance is also belied by the fact that ILA DE continued to make payments under the Consulting Agreement until January 2012. When it did cease payments, it did so because it allegedly could not afford them, rather than due to plaintiffs' nonperformance (*see* NYSCEF 363, 12/14 Email).  Further,

---

[7] Plaintiffs seek to recover the balance of the $2,424,000.  However, they do not calculate what that amount is once accelerated and discounted for interest.

[8] Notably, the record does contain evidence of plaintiffs' performance.  During Marvin Sandler's deposition, he testified that, after the sale to ILA DE, he and his wife worked for ILA DE on a full-time basis for approximately six months as "part of the consulting contract" (NYSCEF 356 Sandler tr at 92).

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC          Page 23 of 48
Motion No.  007 008 009

23 of 48

Schneidmill has acknowledged that ILA DE owed plaintiffs approximately $1.4 million

(NYSCEF 483 Schneidmill tr at 95-96, 113).

For the foregoing reasons, to the extent plaintiffs seek summary judgment on the

first and second causes of action, the motion is granted as against ILA DE.

a. Joint and Several Liability under the Second APA

The parties dispute whether the Second APA creates joint and several liability

among defendants for the breach of contract claims. At the root of the dispute, is

whether the Consulting Agreement and the APA are ancillary documents to the Second

APA. In addition, defendants argue that the breach of contract claims should be

dismissed as against ILA NY, because it was not a party to the APA or the Consulting

Agreement.

The Second APA provides as follows:

> "Joint and Several Liability. The Seller [ILA DE] and the
> [Seller's] Members shall each be jointly, severally,
> unconditionally and absolutely liable for the prompt
> performance of each and every obligation, covenant and
> agreement of the Seller and each of the Stockholders arising
> out of, in connection with, or related to this Agreement or any
> document ancillary hereto and any extensions, renewals or
> modifications hereof or thereof"

(NYSCEF 318, Second APA ¶ 8.7).

Plaintiffs insist that the Consulting Agreement and the APA are "ancillary

documents" to the Second APA, because the Second APA assumed the obligations of

those documents. However, the plain language of the APA and the Consulting

Agreement make clear that, in executing these documents, ILA DE and plaintiffs did not

intend for their assumption by third parties. The Consulting Agreement provides that it

terminates upon the sale of ILA DE's assets (NYSCEF 348, Consulting Agreement ¶ 3

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 24 of 48

[b]).  The APA prohibits assignment of "any of its rights, interests, or obligations" without

prior written approval, which was not obtained here (NYSCEF 347, APA ¶ 10.2).

Therefore, to treat these documents as "ancillary" to the Second APA would strain the

"usual and commonly understood meaning" of that term (*Yaniveth R.*, 27 NY3d at 192).

In any event, the Second APA's joint and several liability provision, by its terms,

does not apply to ILA NY.  It refers to the "Seller and the [Seller's] Members" only

(NYSCEF 318, Second APA ¶ 8.7).  ILA NY, the "Buyer," is not mentioned (*id.* at 5).

Moreover, because ILA NY was not a party to the APA or the Consulting Agreement,

plaintiffs may not maintain their breach of contract claims against it (*see Vogel v Lyman*,

246 AD2d 422, 422 [1st Dept 1998] ["in the absence of privity between plaintiff and

defendant . . . , there is no basis for a breach of contract claim . . ."]).

Accordingly, to the extent plaintiffs seek summary judgment holding the

Individual Defendants jointly and severally liable on the breach of contract claims

pursuant to the Second APA, the motion is denied.  To the extent defendants seek

summary judgment dismissing the breach of contract claims against ILA NY, the motion

is granted.

### b.  Piercing the Corporate Veil

Plaintiffs contend that they are entitled to pierce the corporate veil and hold the

Individual Defendants liable, because, the Individual Defendants undercapitalized ILA

DE and, prior to selling it to ILA NY, they looted its assets and used corporate funds for

personal expenses.  In addition, plaintiffs argue that the Individual Defendants abused

the corporate form to harm them, by selling all of ILA DE's assets to ILA NY and

rendering ILA DE judgment proof.  Plaintiffs point out that after the sale, ILA NY

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                Page 25 of 48
Motion No.  007 008 009

25 of 48

continued to operate the ILA DE's business and, under the Distribution Agreement, ILA
DE's members continued to share in its profits. The only difference, according to
plaintiffs, was that plaintiffs were no longer going to be paid back the Collateral or the
money owed under the Consulting Agreement.

Defendants dispute plaintiffs' allegations of looting and insist that the conveyance
to ILA NY was done in good faith to obtain a tax benefit for those members who wished
to end their involvement with the company, while permitting Schneidmill to continue his
efforts to save the business. Defendants contend that, under the Second APA, ILA NY
assumed all of ILA DE's obligations, including those owed to plaintiffs, and that any
payment of profits under the Distribution Agreement would necessarily occur after
payment of debts, including those owed to plaintiffs. They urge dismissal of the breach
of contract claims as against the Individual Defendants.

"The concept of piercing the corporate veil is a limitation on the accepted
principles that a corporation exists independently of its owners, as a separate legal
entity, that the owners are normally not liable for the debts of the corporation, and that it
is perfectly legal to incorporate for the express purpose of limiting the liability of the
corporate owners" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d
135, 140 [1993] [internal citation omitted]; *see Retropolis, Inc. v 14th St. Dev. LLC*, 17
AD3d 209, 210 [1st Dept 2005] [internal citations omitted] [a member "cannot be held
liable for the [LLC's] obligations by virtue of his status as a member thereof"]).

To pierce the corporate veil, a plaintiff must demonstrate that: "(1) the owner
exercised complete domination over the corporation with respect to the transaction
attacked, and (2) that such domination was used to commit a fraud or wrong against the

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                Page 26 of 48
Motion No. 007 008 009

26 of 48

plaintiff, resulting in the plaintiff's injury" (*First Capital Asset Mgt. v N.A. Partners*, 300 AD2d 112, 116 [1st Dept 2002], citing *Matter of Morris*, 82 NY2d at 141 ). When determining whether the owner exercised complete dominion and control over the corporation, or abused the corporate form, the following factors are considered: "a failure to adhere to corporate formalities, inadequate capitalization, use of corporate funds for personal purpose, overlap in ownership and directorship, or common use of office space and equipment" (*Forum Ins. Co. v Texarkoma Transp. Co.*, 229 AD2d 341, 342 [1st Dept 1996] [citation omitted]). "The determinative factor is whether the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends" (*Port Chester Elec. Constr. Corp. v Atlas*, 40 NY2d 652, 657 [1976] [internal quotation marks and citation omitted]).

"[V]eil-piercing is a fact-laden claim that is not well suited for summary judgment resolution" (*First Capital Asset Mgt.*, 300 AD2d at 117 [internal quotation marks and citation omitted]; *see also Baby Phat Holding Co., LLC v Kellwood Co.*, 123 AD3d 405, 407 [1st Dept 2014] [internal citation omitted] ["[b]ecause a decision to pierce the corporate veil in any given instance will necessarily depend on the attendant facts and equities, there are no definitive rules governing the varying circumstances when this power may be exercised"]).

Here, plaintiffs' evidence that the Individual Defendants deliberately undercapitalized ILA DE, stripped it of its assets and commingled their personal funds with that of ILA DE does not establish, as a matter of law, that the Individual Defendants abused the corporate form to commit a wrongful act against plaintiffs.

**652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**          **Page 27 of 48**
**Motion No. 007 008 009**

27 of 48

First, plaintiffs point to the fact that ILA DE used \$1.2 million of its \$2 million

Revolving Loan to acquire ILA Inc's assets. Their expert, Henry Dubrow, a CPA, opines

as follows:

> "The terms of the loan documents specifically provide for a
> loan of \$4,000,000 for the purpose of acquiring all of the
> stock of ILA Inc., and an additional \$2,000,000 as a Working
> Capital Loan with the purpose of operating the company. By
> utilizing 60% of the working capital money for the acquisition,
> the Defendants were able to invest less money, resulting in
> ILA Delaware being severely undercapitalized"

(NYSCEF 402, Dubrow aff ¶ 13). In addition, plaintiffs rely on the deposition of John

Cookey, TD Bank's regional vice president and the commercial loan officer at the time

of these transactions (NYSCEF 358 Cookey tr at 6-7). Cookey testified that ILA DE's

acquisition of ILA Inc.'s assets was a "leveraged transaction" and as such

"undercapitalized" (*id.* at 115-116).

However, Dubrow does not provide any financial analysis (e.g. cost of running

the business versus cash on hand) to support his conclusion that ILA DE was "severely

undercapitalized." As such, his opinion has no probative value (*see Diaz v New York

Downtown Hosp.*, 99 NY2d 542, 544 [2002]). Nor does the use of the Revolving Loan

to acquire ILA Inc.'s assets demonstrate deliberate undercapitalization of ILA DE. The

Commercial Loan and Security Agreement expressly provided that up to \$1.2 million of

the Revolving Loan was intended for such use (NYSCEF 349, Commercial Loan

Agreement ¶ 2.13). This was fully disclosed in the Flow of Funds Memorandum, which

was included among the APA's "Closing Documents" (NYSCEF Doc Nos. 347; 350).

Additionally, Cookey testified that, while leveraged, "[b]ased on the historical

performance of the company and projections that were provided," it was considered "a

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 28 of 48

28 of 48

viable transaction" (NYSCEF 358 Cookey tr at 116:6-23). What is more, he attributed ILA DE's later financial troubles to a global recession (*id.* at 40-42).

Plaintiffs' attempts to demonstrate that the Individual Defendants looted ILA DE and commingled their personal funds with those of ILA DE also fall short.

First, in their affidavits in support of the motion for summary judgment, both Marvin Sandler and Dubrow state that on May 31, 2012, the day before the conveyance to ILA NY, Schneidmill transferred $228,133 of ILA DE's assets (NYSCEF Doc Nos. 403, Sandler aff ¶ 46; NYSCEF Doc. No 314, Dubrow Report at 5; 402, Dubrow aff ¶ 14). Sandler identifies these assets as barter credits and claims that Schneidmill transferred them to Economic Solution (NYSCEF 403, Sandler aff ¶ 46), whereas Dubrow does not identify the "assets" and states that Schneidmill "personally transferred [them] . . . to his own account." (NYSCEF 314 Dubrow Report at 5; NYSCEF Doc. No 402, Dubrow aff ¶ 14). Neither cites any supporting evidence. A 2012 K-1 form, issued to Economic Solutions and annexed to plaintiffs' moving papers, however, shows a distribution of $228,133 (NYSCEF 333, 2012 K-1). While this may permit an inference of looting, it is not conclusive evidence of it, and "the drawing of legitimate inferences from the facts [is a] jury function[]" (*Asabor*, 102 AD3d at 527).

In opposition, Schneidmill contends that the transfer of $228,133 in ILA DE's barter credits was nothing more than a "'paper transaction" (NYSCEF 430, Schneidmill aff ¶ 55). He explains that Economic Solutions' initial capital contribution to ILA DE consisted of barter credits with a face value of $500,000, which were discounted to $250,000 (NYSCEF 381, Schneidmill Reply aff ¶¶ 56-59). ILA DE's Operating Agreement confirms this (*see* NYSCEF 385, Operating Agreement ¶ 3.2 [c], exhibit A).

Allegedly, ILA DE used some of the barter credits, leaving a balance of $228,133 (NYSCEF 381, Schneidmill Reply aff ¶ 60). Schneidmill claims that "[b]y the time ILA [DE] sold its assets and liabilities to ILA [NY] in 2012, the barter credits had expired and therefore no longer had any value" (NYSCEF 430, Schneidmill aff ¶ 55). He argues that had the barter credits remained on ILA DE's books, "[they] would have been converted as a loss to the company," which he claims ILA DE did not need "because it was not making a profit. Therefore, the capital contribution of Economic Solutions, Inc. to ILA Delaware was re-distributed it [sic] to Economic Solutions, Inc." (*id*). Sorkin, defendants' accountant and expert in this action, also concludes that the barter credits were worthless, because they had not been used in four years and were not likely to be used before their expiration (*see* NYSCEF 466, Sorkin tr at 121, 124-125, 151-156, 196-197, 203, 212). However, Schneidmill does not present any supporting evidence as to the barter credits' expiration date and Sorkin admits that he never saw any and relied on Schneidmill's representation (*id*. at 126-127). While these submissions raise issues of fact, they do not refute plaintiffs' allegation of looting.

Next, plaintiffs point to ILA DE's accounts payable records, dated June 1, 2012, which contain a $867,459.75 entry for Dunkin' Donuts (NYSCEF 327). Sandler states that "ILA [DE] never transacted any business with Dunkin' Donuts" (NYSCEF 403, Sandler aff ¶ 50). Plaintiffs also submit ILA DE's general ledgers, dated December 31, 2012, which contain entries for personal expenses, including Bloomingdale's, Tobacco Plaza and AZ Golf Supplies (NYSCEF 339, General Ledger).

Schneidmill explains that the $867,459.75 Dunkin' Donuts entry "represents a general category of payables owed to a number of miscellaneous creditors" and that to

save time, instead of listing each vendor in QuickBooks, he simply added them up "and entered them under one entry with (what [he] thought was) a silly title so it would stand out" (NYSCEF 381, Schneidmill Reply aff ¶ 31). As for the personal purchases, Schneidmill admits that he made them using ILA DE's credit card (*id.* ¶ 64). However, he states that he "deducted the amount of these purchases from [his] weekly draw that [he] received as the Manager of ILA [DE]" and that he included them as income on his taxes (*id.*). In addition, Cookey testified that TD Bank conducted an annual independent audit of ILA DE's books and never uncovered any suspicious or fraudulent financial activity (NYSCEF 358, Cookey tr at 42-43, 46, 48). Again, whether defendants used ILA DE funds for personal expenses presents an issue of fact.

Lastly, plaintiffs point to the sale of ILA DE's assets to ILA NY. They argue that the Individual Defendants sold all of ILA DE's assets to ILA NY for $1, to render ILA DE insolvent and unable to meet its obligations to plaintiffs. Plaintiffs contend that corporate formalities were not observed, because no alternative bids were sought and no prior notice of the sale was given to creditors (*see* NYSCEF 354, Sheppard tr at 196-199;483 at 90-91; NYSCEF Doc. No. 403, Sandler aff ¶¶ 53-57). They also argue that despite the sale, ILA DE's members retained control over the conveyed assets and a right to a share in ILA NY's profits through the Distribution Agreement. In addition, plaintiffs point to the fact that after the conveyance, Schneidmill continued to run the exact same business as before the conveyance, using the same offices, address, telephone numbers and suppliers and servicing the same customers. Plaintiffs argue that all this demonstrates that the Individual Defendants completely dominated and

**652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC** **Page 31 of 48**
**Motion No. 007 008 009**

31 of 48

controlled ILA DE to advance their personal interests and to commit a wrong against plaintiffs, such that it is appropriate for the Court to pierce the corporate veil.

Defendants counter that the transaction was not structured to defraud plaintiffs, but rather to enable RSS and the Chow Trust to claim an ordinary loss on their taxes, while affording Schneidmill the opportunity to find new investors and save the business. Schneidmill claims to have informed plaintiffs of the planned sale and to have offered them a 20% interest in the new entity (see NYSCEF Doc Nos. 381, Schneidmill Reply aff ¶¶ 11-13). Defendants also argue that there was nothing untoward about the Distribution Agreement, as ILA NY would first pay its obligations before distributing profits. They claim that these obligations included the debt owed to plaintiffs, because ILA NY assumed all of ILA DE's liabilities under the Second APA. Defendants point to the negotiations between Sandler and Schneidmill, after the sale to ILA NY, as additional evidence of their intention to honor that obligation (see NYSCEF 356, Sandler tr at 342-345; NYSCEF Doc. No. 451, 8/7 Email).

Ultimately, plaintiffs do not submit sufficient evidence to demonstrate that the Individual Defendants so dominated ILA DE that the court may conclude, as a matter of law, that it was essentially a dummy corporation used by the Individual Defendants to commit a wrong against plaintiffs (see First Capital Asset Mgt., 300 AD2d at 117 [finding that plaintiff's failed to demonstrate entitlement to veil-piercing, where evidence of undercapitalization, stripping of assets and commingling of funds did not "establish a wrongful act as a matter of law"]; see also Symbax, Inc. v Bingaman, 219 AD2d 552, 554 [1st Dept 1995] [finding that veil-piercing was not supported by sufficient evidence, "since there was no showing of complete corporate domination used to defraud, such

that either [entity] was a dummy corporation used by [the individual defendant] for personal business"] [citations omitted]).

Similarly, defendants are not entitled to a dismissal of the claims as against the Individual Defendants. They do not conclusively refute plaintiffs' claims that they stripped ILA DE of its assets and used ILA DE funds for personal expenses. Moreover, the parties dispute whether Sandler consented to, or was even aware of, the sale to ILA NY beforehand.

Therefore, to the extent plaintiffs seek summary judgment piercing the corporate veil and finding the Individual Defendants liable for the breach of the APA and the Consulting Agreement, the motion is denied. Likewise, to the extent defendants seek summary judgment dismissing the breach of contract claims as against the Individual Defendants, the motion is denied.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing (Twelfth Cause of Action)

Plaintiffs make no effort to demonstrate their entitlement to summary judgement on the twelfth cause of action. They cite to cases holding that "a party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations," without ever setting forth the basis of their claim or how it is distinct from their first breach of contract claims (NYSCEF 404, Memorandum in Support at 20). In opposition, defendants contend that plaintiffs have failed to demonstrate that this claim is anything beyond a restatement of their first cause of action and urge the court to grant summary judgment dismissing the claim as duplicative.

"A cause of action for breach of the implied duty of good faith and fair dealing

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 33 of 48
Motion No. 007 008 009

33 of 48

cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract" (*Hawthorne Group v RRE Ventures*, 7 AD3d 320, 323 [1st Dept 2004] [internal quotation marks and citation omitted]).

Here, while the twelfth cause of action is largely duplicative of the first cause of action, it does contain the additional allegation that defendants breached the covenant of good faith and fair dealing by using the Collateral to secure the Revolving Loan, in addition to the Term Loan, without informing plaintiffs (*see* NYSCEF 85, amended complaint ¶¶ 203-207). Neither side has presented any evidence on this issue. Thus, neither side is entitled to summary judgment (*see Alvarez,* 68 NY2d at 324; *Sabalza*, 85 AD3d at 437-438).

However, having dismissed the breach of contract claims as against ILA NY for lack of privity, the breach of the implied covenant of good faith and fair dealing must follow suit (*see Keefe v New York Law School*, 71 AD3d 569, 570 [1st Dept 2010] ["[a]bsent the existence of a contract, a claim alleging breach of the implied covenant of good faith and fair dealing is legally unavailing"]; *see also Four Winds of Saratoga v Blue Cross & Blue Shield of Cent. N.Y.*, 241 AD2d 906, 907 [3d Dept 1997] [dismissing a claim for breach of the implied covenant of good faith and fair dealing, where plaintiff "failed to establish contractual privity with defendant"]).

Therefore, to the extent plaintiffs seek summary judgment on the twelfth cause of action, the motion is denied. To the extent defendants seek summary judgment dismissing the twelfth cause of action, the motion is granted as against ILA NY only.

**652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**
**Motion No. 007 008 009**

**Page 34 of 48**

34 of 48

### 3. Debtor and Creditor Law §§ 273-276-a (Six through Tenth Causes of Action)

Plaintiffs contend that they are entitled to summary judgment on their constructive fraudulent conveyance claims pursuant to DCL §§ 273 and 274, because: (1) in transferring ILA DE's assets for $1, defendants left it insolvent or with unreasonably small capital to conduct its business; (2) the conveyance was not for fair consideration, with ILA NY merely assuming ILA DE's debt, without payment of antecedent debt; and (3) the transfer involved an ILA DE insider, Schneidmill, rendering the conveyance presumptively in bad faith. Plaintiffs also argue that they are entitled to summary judgment on their constructive fraudulent conveyance claim pursuant to DCL § 275, because defendants knew that transferring all of ILA DE's assets would trigger the Consulting Agreement's acceleration clause, rendering ILA DE liable for approximately $1.4 million, without the means to pay. Lastly, plaintiffs contend that they are entitled to summary judgment on their actual fraudulent conveyance claim pursuant to DCL § 276 and the award of related attorney's fees pursuant to DCL § 276-a, because numerous badges of fraud demonstrate that defendants conveyed ILA DE to ILA NY with the intent to defraud plaintiffs.

Defendants counter that ILA NY paid fair consideration, because, at the time of the transfer, ILA DE had a negative net worth. In addition, as evidence of their good faith, defendants point to the communications between the parties, before and after the conveyance, in which plaintiffs were informed of ILA DE's financial difficulties and Sheppard and Schneidmill attempted to find ways to satisfy the debt owed to plaintiffs. Defendants also argue that the DCL §§ 273-275 claims must be dismissed, because ILA DE was already insolvent at the time of the conveyance. With respect to the DCL §

**652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC**          **Page 35 of 48**
**Motion No. 007 008 009**

275 claim, defendants add that it must be dismissed, because plaintiffs' claims are based on preexisting debt and there is no evidence that ILA DE anticipated any future debt. Lastly, defendants contend that, because the evidence demonstrates that they made every effort to turn the business around and, when that failed, continued to negotiate with Sandler in order to satisfy plaintiffs' claims, the actual fraud claim pursuant to DCL § 276, and the attendant attorneys' fees claim pursuant to DCL 276-a, must be dismissed.

The parties also dispute whether the Individual Defendants may be held liable as beneficiaries of the conveyance.

Pursuant to DCL § 273, a conveyance is fraudulent, regardless of intent, if the debtor "is or will be thereby rendered insolvent" and the "conveyance is made or the obligation is incurred without a fair consideration" (DCL § 273; *see also Joslin v Lopez,* 309 AD2d 837, 838 [2d Dept 2003] ["both insolvency and lack of fair consideration are prerequisites to a finding of constructive fraud under [DCL] section 273 . . ."]). "The Debtor and Creditor Law identifies two indicia of 'fair consideration' for conveyed property: the adequacy of what is given in exchange for it and 'good faith'" (*Sardis v Frankel*, 113 AD3d 135, 141 [1st Dept 2014]; DCL § 272). "'Good faith' is lacking where there is a failure to deal honestly, fairly, and openly" (*Sardis*, 113 AD3d at 143 [internal quotations marks and citation omitted]). "Transfers to a controlling shareholder, officer or director of an insolvent corporation are deemed to be lacking in good faith and are presumptively fraudulent" (*Matter of CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. Partnership*, 25 AD3d 301, 303 [1st Dept 2006]; *see Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein*, 166 AD3d 496, 497 [1st Dept 2018]

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 36 of 48

36 of 48

[finding that "because the conveyances were made to insiders of the debtor, they were presumptively made in bad faith"]).

DCL §§ 274 and 275 also provide for constructive fraud where there is no "fair consideration," but, unlike DCL § 273, they do not require a showing of insolvency. Instead, DCL § 274 requires a showing that the "person making [the conveyance] is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital." DCL § 275 requires a showing that "the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature" (DCL § 275; see Wall St. Assoc. v Brodsky, 257 AD2d 526, 528 [1st Dept 1999] [stating that DCL § 275 requires "intent or belief that insolvency will result"]).

DCL § 276 addresses actual fraud and provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." To establish actual intent to hinder, delay, or defraud creditors, a plaintiff may "rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent" (Wall St. Assoc., 257 AD2d at 529 [internal quotation marks and citations omitted]). These include:

> "a close relationship between the parties to the alleged
> fraudulent transaction; a questionable transfer not in the
> usual course of business; inadequacy of the consideration;
> the transferor's knowledge of the creditor's claim and the
> inability to pay it; and retention of control of the property by
> the transferor after the conveyance"

652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 37 of 48
Motion No. 007 008 009

37 of 48

(*id.*; *see also Matter of Wimbledon Fin. Master Fund, Ltd.*, 166 AD3d at 497). An action

pursuant to the DCL may be brought against the debtor, as well as "both a transferee of

a debtor's assets and beneficiary of the conveyance who participated in the fraudulent

transfer . . . ." (*Schwartz v Boom Batta, Inc.*, 137 AD3d 512, 513 [1st Dept 2016]).

Here, defendants concede that ILA DE was insolvent at the time of the

conveyance to ILA NY (NYSCEF 391, Memorandum in Support at 19, 21). They

mistakenly argue that this requires dismissal of all of the constructive fraudulent

conveyance claims. However, the plain language of DCL § 273 provides that a

conveyance is fraudulent when made "by a person *who is* or will be thereby rendered

insolvent" (DCL § 273 [emphasis added]; *see Wall St. Assoc.*, 257 AD2d at 528 [stating

that a DCL § 273 requires a showing that the debtor "[was] insolvent prior to the

conveyance or [was] rendered insolvent thereby . . ."]; *see also Matter of CIT

Group/Commercial Servs., Inc.*, 25 AD3d at 302 [affirming grant of default judgment on

fraudulent conveyance claims, where, among other things, the subject transfer "either

rendered [the debtor] insolvent or was made at a time when [the debtor] was

insolvent"]).

In addition, the lack of fair consideration is presumed, because Schneidmill was a

member and an officer of ILA DE. Such transfers to insiders are "deemed to be lacking

in good faith and are presumptively fraudulent" (*CIT Group/Commercial Servs., Inc.*, 25

AD3d at 303). For example, in *Matter of P.A. Bldg. Co v Silverman*, the court held that:

> "[e]ven were appellant able to establish that the funds he
> transferred from a corporation of which he was the chairman
> and 80% shareholder were equivalent to the value of the
> loans he had previously advanced to it, those transfers
> would still be invalid, inasmuch as preferential transfers to
> directors, officers and shareholders of insolvent corporations

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009
Page 38 of 48

38 of 48

> in derogation of the rights of general creditors do not fulfill
> the requirement of good faith"

(298 AD2d 327, 328 [1st Dept 2002]). Accordingly, plaintiffs have established prima

facie entitlement to summary judgment on their DCL § 273 claim.

In opposition, defendants contend that the evidence demonstrates that ILA NY

paid fair consideration for ILA DE's assets. They provide the report and deposition

transcript of their accounting expert, Sorkin, who concluded that ILA DE had a negative

value and that, in assuming its debts and paying $1, ILA NY paid more than ILA DE was

worth (NYSCEF 369, Sorkin Report; NYSCEF Doc. No. 466, Sorkin tr at 176-180, 239-

240, 250-251, 258). In addition, defendants argue that ILA DE's members acted in

good faith and point to: (1) communications and meetings in which Sheppard and

Schneidmill informed Sandler of ILA DE's financial decline, sought advice and

attempted to negotiate an alternate arrangement to satisfy plaintiffs' claims (see

NYSCEF 356, Sandler tr, at 196-197, 213, 310, 319-320, 333, 335-336 [testifying about

meetings and conversations he had with Sheppard and/or Schneidmill regarding ILA

De's financial difficulties]); NYSCEF Doc. No 359, April 2011 Email [from Schneidmill,

stating that ILA DE required additional funds]; NYSCEF Doc. No. 360, June 9, 2011

Email [from Sandler to Sheppard, confirming a meeting for the following day]; NYSCEF

Doc. No. 354, Sheppard tr, at 197 [testifying that he offered to effectively give the

business back to Sandler]; NYSCEF Doc. No. 363, December 14, 2011 Email [from

Sheppard, ending the Consulting Agreement payments and proposing an alternate

payment plan]); (2) additional funds that ILA DE's members provided in 2011 and 2012

to enable ILA DE to meet its obligations to TD Bank and plaintiffs (see NYSCEF 378,

QuickBooks Ledgers); (3) negotiations between Schneidmill and Sandler, in which

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 39 of 48
Motion No. 007 008 009

39 of 48

Schneidmill offered the Sandlers a 20% interest in ILA NY in exchange for forgiveness of all debt (NYSCEF 356, Sandler tr at 223-232; 343); and (4) the August 2012 discussion regarding the possibility of Sandler taking the business's URLs in exchange for a release of claims (*id.* at 234-235, 345).

Defendants' submissions are insufficient to raise an issue of fact. Their expert's report is not signed. "[T]he unsworn report is not in admissible form and may not be considered in opposition to the summary judgment motion . . . ." (*Ulm I Holding Corp. v Antell*, 155 AD3d 585, 586 [1st Dept 2017]). Likewise, Sorkin's deposition transcript is insufficient to raise an issue of fact. For example, Sorkin testified that he deemed it reasonable to write off approximately $3.5 million of goodwill, because: goodwill is an intangible asset, "you can't go to the bank with that" (NYSCEF 466, Sorkin tr at 258:18-20); ILA DE's liabilities exceeded its tangible assets; and ILA DE "had no way of being able to make any money at that point" (*id.* at 176). However, Sorkin does not specify what facts led him to conclude that ILA DE had no way to generate income or what accounting principle required him to completely write off ILA DE's goodwill. At one point in his deposition, Sorkin states that "the goodwill on the books had to be valued at zero, which is in accordance with the accounting standard codification 350" (*id.* at 251:20-23). However, he does not elaborate further. In another part of the transcript, Sorkin explains

> "that part of any type of report for financial purposes one has to do what they call an impairment test of your goodwill under ASC 350 where if you believe that the goodwill no longer has that value, you have to do an impairment test, which would lead to the eventual write down or write off of the goodwill"

652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 40 of 48
Motion No. 007 008 009

40 of 48

(*id.*at 241:2-9). However, Sorkin does not provide any detail as to what is involved in an

impairment test, does not state whether he conducted one and, if so, what the result

was. Where, as here, the expert's opinion is "unsupported by any evidentiary

foundation, . . . the opinion should be given no probative force and is insufficient to

withstand summary judgment" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544

[2002]; *contra Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 44 [2003] [finding the

existence of material issues of fact requiring a trial, where "[b]oth parties supported their

positions with detailed, nonconclusory expert depositions and other submissions which

explained the bases for the opinions"]).[9]

As for defendants' evidence of their good faith intention to repay plaintiffs,

"preferential transfers to directors, officers and shareholders of insolvent corporations in

derogation of the rights of general creditors do not fulfill the requirement of good faith"

(*Matter of P.A. Bldg. Co.*, 298 AD2d at 328).

For the foregoing reasons, plaintiffs are entitled to summary judgment of the sixth

cause of action as against ILA DE. In addition, because "[l]iability is imposed on parties

who participate in the fraudulent transfer of a debtor's property and are transferees of

the assets and beneficiaries of the conveyance," plaintiffs are also entitled to summary

judgment as against ILA NY and Schneidmill (*see Constitution Realty*, 309 AD2d 714,

716 [1st Dept 2003] [granting partial summary judgment on a constructive fraudulent

_____

[9] The court notes that Dubrow's affidavit and report, which are nearly identical, suffer
from many of the same defects as Sorkin's opinion. Dubrow often offers conclusions
without a sufficient evidentiary foundation (*see* NYSCEF Doc Nos. 314, 402). However,
as discussed above, plaintiffs are able to establish their prima facie case of constructive
fraud without reliance on his expert opinion. Therefore, this decision does not delve into
its shortcoming further.

conveyance claim against a newly formed professional corporation, which was the recipient of a dissolved law firm's good will, as well as against the individual attorneys who formed it]).

As discussed above, it is undisputed that ILA DE was insolvent at the time of the conveyance. DCL §§ 274 and 275 address constructive fraud where the conveyance does not result in immediate insolvency. Therefore, to the extent defendants seek summary judgment dismissing the seventh and eighth causes of action, the motion is granted and those causes of action are dismissed in their entirety.

Turning to DCL § 276, plaintiffs establish numerous badges of fraud: the transfer was to an insider for inadequate consideration; defendants did not obtain plaintiffs' written consent to the transaction; Schneidmill retained control of ILA DE's assets post-transfer as ILA NY's sole member and president; and ILA DE was well aware of its debt to plaintiffs and its inability to pay it at the time of the transfer. However, defendants also present evidence of continuous communications with plaintiffs and numerous attempts to negotiate an alternative method of payment. Thus, whether defendants actually intended to defraud plaintiffs presents an issue of fact requiring denial of summary judgment (see Guerrand–Hermes v Guerrand–Hermes, 30 AD3d 339 [1st Dept.2006] [finding that whether a son had "honest purpose" in making a judgment by confession in favor of his father warranted a hearing on a motion by the son's ex-wife to vacate judgment by confession as a fraudulent conveyance under DCL § 276]).

Not having established actual intent to defraud, plaintiffs are not entitled to attorneys' fees under DCL § 276-a (see Farm Stores v School Feeding Corp., 102

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 42 of 48

42 of 48

AD2d 249, 256-257 [2d Dept 1984], *affd in part, appeal dismissed in part*, 64 NY2d 1065 [1985]).

For the foregoing reasons, to the extent plaintiffs seek summary judgment on the sixth cause of action, the motion is granted as against ILA DE, ILA NY and Schneidmill and the motion is otherwise denied. To the extent defendants seeks summary judgment dismissing the DCL claims, the motion is granted as to the seventh and eighth causes of action, and the motion is otherwise denied.

C. <u>Motion to Strike Plaintiffs' Jury Demand (Motions Sequence Number 009)</u>

Defendants contend that the jury demand should be stricken, because both the APA and the Consulting Agreement contain jury waivers. Defendants also argue that plaintiffs remain bound by these waivers, even if they pierce the corporate veil to hold the Individual Defendants liable for the breach of contract claims. In addition, defendants contend that the DCL claims and the doctrine of piercing the corporate veil are equitable in nature and, as such, plaintiffs are not entitled to a jury trial. Plaintiffs counter that the main thrust of their claims is legal, rather than equitable, which entitles them to a jury trial.

Pursuant to CPLR 4101, a party has a right to a jury trial in any action that "sets forth facts which would permit a judgment for a sum of money only." The right is not waived "by joining [such a claim] with another claim with respect to which there is no right to trial by jury and which is based upon a separate transaction" (CPLR 4102 [c]). "Inclusion of a demand for money damages in the complaint does not, in and of itself, guarantee entitlement to a jury trial. Rather, it must be determined whether the main

652154/2013 SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 43 of 48

43 of 48

thrust of the action is for legal damages or for equitable relief" (*Phoenix Garden Rest. v Chu*, 234 AD2d 233, 234 [1st Dept 1996] [citations omitted]).

As a preliminary matter, the court notes that the opposition to the motion, filed on April 8, 2019, was served three days late (*see* NYSCEF 406 [stipulating that opposition papers must be filed no later than April 5, 2019]). However, "as there was no showing of prejudice, and defendant[s] [were] able to submit reply papers on the motion," the court will consider plaintiffs' papers (*Serradilla v Lords Corp.*, 117 AD3d 648, 649 [1st Dept 2014]).

Here, both the APA and the Consulting Agreement contain jury waivers. The Consulting Agreement states, in pertinent part, that:

> "THE PARTIES EACH WAIVE THEIR RESPECTIVE RIGHT
> TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF
> ACTION BASED UPON OR ARISING OUT OF OR
> RELATED TO THIS AGREEMENT IN ANY ACTION,
> PROCEEDING OR OTHER LITIGATION OF ANY TYPE
> BROUGHT BY ANY OF THE PARTIES AGAINST ANY
> OTHER PARTY OR ANY AFFILIATE OF ANY OTHER
> SUCH PARTY, WHETHER WITH RESPECT TO
> CONTRACT CLAIMS, TORT CLAIMS OR OTHERWISE.
> THE PARTIES EACH AGREE THAT ANY SUCH CLAIM OR
> CAUSE OF ACTION WILL BE TRIED BY A COURT TRIAL
> WITHOUT A JURY" (NYSCEF 348, APA ¶ 21).

The APA provides as follows:

> "THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY
> AND INTENTIONALLY WAIVE THE RIGHT ANY OF THEM
> MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY
> LITIGATION BASED HEREON OR ARISING OUT OF,
> UNDER OR IN CONNECTION WITH THIS AGREEMENT
> AND ANY DOCUMENT CONTEMPLATED TO BE
> EXECUTED IN CONJUNCTION HEREWITH, OR ANY
> COURSE OF CONDUCT, COURSE OF DEALING,
> STATEMENTS (WHETHER VERBAL OR WRITTEN) OR
> ACTIONS OF ANY PARTY"

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

(NYSCEF 315, Consulting Agreement ¶ 10.13).

"Such waivers are valid and enforceable, unless adequate basis to deny enforcement is set forth by the challenging party" (*Fordham Univ. v Manufacturers Hanover Trust Co.*, 145 AD2d 332, 333 [1st Dept 1988]; *see also Tiffany at Westbury Condominium v Marelli Dev. Corp.*, 34 AD3d 791, 791 [2d Dept 2006] ["[i]t is well settled that by written agreement parties may expressly waive their right to a jury trial on any claim"]). To the extent that plaintiffs seek to hold the Individual Defendants liable on their breach of contract claims by piercing the corporate veil, plaintiffs remain bound by the waivers in their agreements with ILA DE (*see Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993] ["an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners"]; *see also Hudson-Spring Partnership, L.P. v P+M Design Consultants, Inc.*, 2015 WL 375006, *4 [Sup Ct, NY County, Jan. 22, 2015, No. 652229-2010] [finding that, although the defendant was not a party to the lease containing the jury waiver, it was bound by the waiver, because plaintiff had demonstrated that the lessee corporation "was a mere 'dummy' corporation" of the defendant]). Therefore, plaintiffs are not entitled to a jury trial on their breach of contract claims and the incidental issue of veil-piercing.

Nor are plaintiffs entitled to a jury trial on the twelfth cause of action. The APA's waiver applies to any claim "arising out of, under or in connection with" the APA (NYSCEF 315, ¶ 10.13). Plaintiffs' claim for breach of the implied covenant of good

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 45 of 48
Motion No. 007 008 009

45 of 48

faith and fair dealing necessarily arises out the APA (*cf Keefe*, 71 AD3d at 570). As such, the twelfth cause of action falls within the ambit of the APA's jury waiver.

However, plaintiffs are entitled to a jury trial on their fraudulent conveyance claims. While courts have held that fraudulent conveyance claims "are equitable in nature and therefore resulted in a waiver of the right to a jury trial" (*Posner v S. Paul Posner 1976 Irrevocable Family Trust*, 260 AD2d 268, 269 [1st Dept 1999]), the determination is based on "whether the main thrust of the action is for legal damages or for equitable relief" (*Phoenix Garden Rest.*, 234 AD2d at 234). Here, both the transferor and the transferee are defunct entities and all assets have been sold off (NYSCEF 483, Schneidmill tr at 66-67, 336, 339, 341). Plaintiffs are not seeking to undo the conveyance. They are seeking damages. "[F]raudulent conveyance claims which seek monetary damages only are legal in nature" (*Miller v Epstein*, 293 AD2d 282, 282 [1st Dept 2002] [affirming denial of in limine motion to strike a jury demand]). Therefore, plaintiffs are entitled to a jury trial on the six through tenth causes of action.

For the foregoing reasons, defendants' motion to strike the jury demand is granted as to the first, second and twelfth causes of action and the motion is otherwise denied.

Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment (motion sequence 007) is granted to the extent of granting partial summary judgment in favor of plaintiffs:

1. on the first and second causes of action as against defendant Independent Living Aids LLC (a Delaware LLC);

652154/2013  SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC                    Page 46 of 48
Motion No.  007 008 009

46 of 48

2. on the sixth cause of action as against defendants Independent Living Aids LLC (a Delaware LLC); Independent Living Aids, LLC (a New York LLC) and Irwin Schneidmill; and it is further

ORDERED that plaintiffs shall, within 15 days from service of a copy of this order with notice of entry, serve upon defendants a supplemental demand setting forth the total damages to which the plaintiffs deem themselves entitled; and it is further

ORDERED that defendants' motion for summary judgment (motion sequence 008) is granted to the extent of granting partial summary judgment:

1. dismissing the first, second and twelfth causes of action as against defendant Independent Living Aids, LLC (a New York LLC);

2. dismissing the seventh and eighth causes of action in their entirety; and it is further

ORDERED that defendants' motion to strike plaintiffs' jury demand (motion sequence number 009) is granted with respect to the first, second and twelfth causes of action, and the motion is otherwise denied; and it is further

ORDERED that the action shall continue as to the remaining causes of action; and it is further

ORDERED that the parties shall file motions in limine within 30 days of the entry of this decision by the court on NYSCEF. Otherwise, waived; and it is further

ORDERED that a virtual pre-trial conference October 5, 2020 at 10 am.

652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No. 007 008 009

Page 47 of 48

## Motion Seq. No. 007

**August 28, 2020**
DATE

ANDREA MASLEY, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | x | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | x | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

## Motion Seq. No. 008

**August 28, 2020**
DATE

ANDREA MASLEY, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | x | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | x | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

## Motion Seq. No. 009

**August 28, 2020**
DATE

ANDREA MASLEY, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | x | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | x | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652154/2013   SANDLER, MARVIN vs. INDEPENDENT LIVING AIDS LLC
Motion No.  007 008 009

Page 48 of 48