SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

PRESENT: HON. ANDREA MASLEY                PART                48
                                    Justice
-----------------------------------------------------------------X
MARVIN SANDLER, MIMI SANDLER, and MIMARV, INC.        INDEX NO.        652154/2013
F/K/A INDEPENDENT LIVING AIDS, INC.,

                                    Plaintiffs,

                - v -

INDEPENDENT LIVING AIDS LLC (A NEW YORK LLC),
INDEPENDENT LIVING AIDS LLC (A DELAWARE LLC),
RSS ADVENTURE CAPITAL LLC, THE CHOW/SPEACH
TRUST, ECONOMIC SOLUTIONS, INC., MATTHEW
SHEPPARD, JOHN RADZIWILL, and IRWIN
SCHNEIDMILL,

                                    Defendants.
-----------------------------------------------------------------X

Following this court's August 28, 2020 decision on summary judgment on liability in favor of plaintiffs Marvin Sandler, Mimi Berman Sandler, and MiMarv, Inc. f/k/a Independent Living Aids, Inc. (ILA Inc.), the court held an inquest on damages on the first cause of action for breach of the Asset Purchase Agreement (APA), the second cause of action for breach of the 2008 Consulting Agreement (Consulting Agreement), and on the sixth cause of action for fraudulent conveyance pursuant to the Debtor Creditor Law against defendants Independent Living Aids LLC (A Delaware LLC) (ILA-DEL), Independent Living Aids LLC (A New York LLC) (ILA-NY), Economic Solutions, Inc., and Irwin Schneidmill.[1] (NYSCEF Doc. No. [NYSCEF] 518, Decision.)

The background is set forth in that decision and will not be repeated here except as relevant to the limited issue before the court. (*Id.*) On May 23, 2008, plaintiffs sold

---

[1] On October 16, 2019, the other defendants RSS Adventure Capital, LLC, The Chow Marital Share Trust as successor to the Chow-Speach Trust, Matthew Sheppard, and John Radziwill settled all claims with plaintiffs. (NYSCEF 491, Stipulation of Discontinuance.)

ILA Inc. to defendant ILA-DEL for $10 million pursuant to the APA of which $2 million would be paid over a seven-year period pursuant to the Consulting Agreement. (NYSCEF 521, APA; NYSCEF 522, Consulting Agreement.) Schneidmill, a trained accountant, became president of ILA-DEL on May 8, 2008, as well as its managing member, and he also maintained ILA-DEL's books and records. (NYSCEF 535, Schneidmill Tr at 138:2-139:11, 140:23-141:2.) Schneidmill did not contribute funds to ILA-DEL, but Economic Solutions, a company he owns, contributed 500,000 barter credits. (*Id.* at 144:10-145:15, 151:17-20.) Each barter credit is valued at $1 and expired in August 2013. (*Id.* at 151:1-2, 151:23-25.) TD Banknorth, N.A. (Bank) financed the 2008 transaction. (NYSCEF 418, Commercial Loan.) The Bank required security in the amount of $450,000 which plaintiffs put up on certain conditions, but the security was never returned to plaintiffs. (NYSCEF 317, Pledge Agreement between ILA-DEL and Bank, which plaintiffs signed as pledgor.) Instead, when defendants suffered financial difficulties, Schneidmill formed ILA-NY on May 31, 2012 which purchased ILA-DEL's assets and liabilities for $1 on June 1, 2012. (NYSCEF 523, 2012 APA.) The Bank approved the sale on the condition that the $450,000 security would be applied to reduce the amount of the loan which occurred on September 18, 2012. (NYSCEF 441, Modification Agreement ¶6.)

The predominant dispute for this hearing was to determine whether ILA-DEL's net worth on May 30, 2012 was negative, as defendants assert, or sufficient to pay plaintiffs all or part of what they are owed. The court held that the burden of proof to establish value rested with plaintiffs. (NYSCEF 529, Court Tr. at 14:9-15:7.) The amount of plaintiffs' money judgment would be the lower of the net value of the property at the time of the transfer or the amount owed to plaintiffs. (*See Manufacturers and Traders Trust Co. v Lauer's Furn. Acq., Inc.*, 226 AD2d 1056, 1057 [4th Dept 1996].)

Defendants insist that plaintiffs failed to satisfy their burden. Defendants rely on plaintiffs' attorney's statement at a deposition that determining the value of ILA-DEL requires an expert to value ILA-DEL's assets. Defendants assert that plaintiffs neither retained such an expert nor valued ILA-DEL's assets at all. Rather, plaintiffs retained Henry Dubrow, a certified public accountant, who had never before been qualified as an expert witness and who testified that he lacked the expertise needed to value ILA-DEL's assets. Indeed, Dubrow testified that he did not undertake a valuation of a single asset of ILA-DEL. Rather, he was engaged to opine on accepted accounting procedures and whether ILA-DEL followed such procedures and thus, he relied on the book value, an alternative to valuing each asset. (NYSCEF 535, Dubrow Tr78:14-79:7; NYSCEF 314, Dubrow Nov. 15, 2017 Report at 3/9.[2])

Defendants also challenge the documentary evidence on which plaintiffs rely to prove ILA-DEL's value on May 30, 2012. For example, the financial documents on which plaintiffs rely are not timely and relate to ILA-NY, not ILA-DE. Defendants insist that plaintiffs cannot prove value through tax documents, a financial statement, and compilation report because they are contradictory and fail to establish a definitive value for any ILA-DEL asset.

Finally, defendants object to plaintiffs' introduction of defendants' expert report during plaintiffs' direct case and plaintiffs' attempt to discredit Mitchell Sorkin, a partner of Raiche Ende Malter & Co. LLP, defendants' expert. Sorkin concluded that ILA-DEL's liabilities exceeded tangible assets because he opined that goodwill had no value resulting in a negative net value for ILA-DEL. According to defendants, plaintiffs failed to undermine Sorkin's analysis. Moreover, defendants assert that, even if the court does not credit Sorkin's report and testimony, that would not satisfy plaintiffs' burden to

---

[2] Page numbers are from NYSCEF.

establish a value for ILA-DEL's assets. Therefore, defendants ask the court to conclude that plaintiffs have failed to satisfy their burden to establish the net value of ILA-DEL's assets on May 30, 2012.

As to the first cause of action, based upon the uncontroverted and credible testimony of plaintiff Marvin Sandler and the documentary evidence, including the 2008 APA, the 2012 APA, and the Bank's pledge, and modification agreement, plaintiffs have established by a preponderance of credible evidence that they are entitled to judgment against ILA-DEL in the amount of $450,000 for the return of the Collateral, with interest from September 19, 2012, the date that ILA-NY entered into the modification agreement with the Bank, and the Bank took the $450,000 to ILA-DEL's loan.

As to the second cause of action, based upon the uncontroverted and credible testimony of plaintiff Marvin Sandler and the documentary evidence, including the 2008 APA, the Consulting Agreement, and the 2012 APA, plaintiffs have established by a preponderance of the credible evidence that they are entitled to judgment against ILA-DEL in the amount of $1,456,000 for the remaining balance due under the Consulting Agreement with interest from June 1, 2012, when the Consulting Agreement terminated due to change in control (§3(b)) of the Consulting Agreement and the amount due fully accelerated.[3]

As to the sixth cause of action, plaintiffs established that ILA-DEL's net value on May 30, 2012 was $2,665,981.75, contrary to defendants' position that ILA-DEL had a negative net worth and far exceeding the $1 ILA-NY paid ILA-DEL on June 1, 2012.

---

[3] The Consulting Agreement also states that when acceleration is triggered, there shall be a 5% discount. (NYSCEF 316, Consulting Agreement §[3][b][iii].) Defendants object to plaintiffs' omission of the discount from plaintiffs' calculation of damages. Since there was a change in control, the entire balance of $1,456,000 was due. The 5% did not apply because the balance was not paid in full. (Id.)

The ILA-DEL Internally Prepared Balance Sheet of May 30, 2012,[4] which itemized ILA-DEL's assets and liabilities transferred to ILA-NY, reports a balance of $2,665,981.75 as of May 30, 2012 before any adjustments were made by Sorkin in 2017. (NYSCEF 532, Balance Sheet at 4/5[5]; NYSCEF 535, Schenidmill Tr at 164:10-14.) Assets total $7,042,561.74, including goodwill in the amount of $3,558,652.83 and inventory of $1,981,794.50. (NYSCEF 532, Balance Sheet at 4/5.) Liabilities total $4,376,709.99 including loans payable to TD Bank in the amounts of $1,989,476.00 and $527,172.00, as well as accounts payable of $694,110.64 and long-term debt of $462,341.86. (Id.) Schneidmill, a trained accountant, testified that he supplied the information used to prepare the balance sheet and that the numbers are true and accurate. (NYSCEF 535, Schneidmill Tr at 138:2-139:11). He also testified that the information used to prepare the balance sheet was obtained from the internal books and records of ILA-DEL, which Schneidmill maintained. (Id. at 165:11-15.) Sorkin stated that there was no evidence of fraud or mismanagement in the books and records. (NYSCEF 531, Sorkin email June 15, 2017 at 114/137.) The court finds this balance sheet to be reliable and the best evidence of the value of ILA-DEL on May 30, 2012 in the absence of an asset valuation or efforts to sell assets such as customer lists or trademarks. (NYSCEF 535, Schneidmill Tr at 211:5-212:3.)

Defendants' former accountant until 2012, Mitchell Sorkin, was called as an expert to testify. The firm Raich Ende Malter & Co LLP, where Sorkin is a partner, was

---

[4] The Report in evidence gives the financial condition as of May 30, 2012 (NYSCEF 532), and the court finds that this is the correct date for the valuation at issue here since ILA-NY assumed all of ILA-DEL's liabilities as of May 31, 2012. (NYSCEF 318, 2012 APA.) While the effective date of the transaction was May 31, 2012 and the closing was on June 1, 2012, the numbers in the balance sheet relate to May 30, 2012. (NYSCEF 530, email from Sorkin of Jan. 10, 2017 at 94; April 24, 2017 email from Sorkin at 89)

[5] Page numbers are from NYSCEF.

engaged to prepare defendants' expert report (Report). (NYSCEF 532, Report; NYSCEF 534, Sorkin Tr at 234:22-235:17.) Specifically, the firm was engaged to determine ILA-DEL's financial condition on May 30, 2012. (NYSCEF 532, Report 2/5.) The balance sheet is contained in defendants' March 20, 2017 expert report. (*Id.*) It concludes with a negative net worth for ILA-DEL on May 30, 2012 of ($1,130,937.08). (*Id.* at 5/5[6]) Two adjustments lead to this adjusted balance with a negative net worth: goodwill of $3,558,652.83 and barter credits of $228,000 are written off. (NYSCEF 532, Report at 2, ¶¶1, 2.)

In addition to being ILA-DEL's former accountant and an expert in this case, in May 2012, Sorkin provided accounting advice to defendants on structuring the transaction at issue here which transferred the assets from ILA-DEL to ILA-NY so that defendants could obtain the best possible tax benefit and Schneidmill could continue operating the company. (NYSCEF 534, Sorkin Tr. at 242:17-24). In his May 2, 2012 email to defendants, Sorkin wrote that "unless ILA sold its assets or closed down, writing off goodwill may be difficult." (NYSCEF 531, email at 1[7].) In a May 4, 2012 memorandum to Schneidmill, Sorkin advised how the transaction could be structured for defendants to abandon their interests in ILA-DEL and write off their investments, but allow Schneidmill to continue the business, to take an ordinary loss instead of a capital loss from their investment. (NYSCEF 531, May 4, 2012 Memorandum; NYSCEF 534, Sorkin Tr. at 243:15-20.)

According to the Report, goodwill was adjusted to zero because management said it had no continuing value. (NYSCEF 532, Report at 3/5). The adjusted balance sheet shows that on May 30, 2012, ILA -DEL had $3.48 million in tangible assets

---

[6] Page numbers are from NYSCEF.
[7] Page numbers are from NYSCEF.

($7,042,561 total assets minus $3,558,652 of goodwill) yet had $4.38 million in liabilities ($2.68 million of which were secured against ILA-DEL's assets), for a deficit of nearly $1 million. (*Id.*) Thus, Sorkin concluded that as of May 30, 2012, ILA-DEL was unable to meet its existing financial obligations. (NYSCEF 534, Sorkin Tr at 254:11-255:9.) Based on that insolvency, Sorkin wrote off ILA-DEL's goodwill in 2017. (*Id.*) According to Sorkin, "the impairment was such that they couldn't continue – ILA Delaware couldn't continue as a company and, therefore, the goodwill was written off;" "we saw what the impairment was and because there was no tangible net worth, the goodwill was valued at zero. The liabilities exceed the assets [s]o take out the goodwill." (*Id.* at 255:20-23.)

      Dubrow challenged this goodwill write off as not within good and accepted accounting practice because it was a related party transaction which required an independent verification of the value. (NYSCEF 535, Dubrow Tr at 100:10-17.) Sorkin's goodwill write off is also inconsistent with ILA-DEL's Form 8594 which reported the value of goodwill at $1.1 million. (*Id.* at 101:23-102:4.) Meanwhile, on the NYS Bulk Sale Transfer Form, ILA-DEL reported goodwill of $800,000. (*Id.*) Finally, Dubrow observed that ILA-DEL is an ongoing business that had a customer list, customers, patents, and trademarks, which are significant assets which allowed it to continue operations after May 2012. (*Id.* at 114:6-24.) Indeed, Schenidmill admitted that for one and a half years, he continued to use the same business name, office, website, trademarks, and catalogs after the sale to ILA-NY on June 1, 2012 with revenue of between $1 and $5 million. (NYSCEF 535, Schenidmill Tr at 175:13-177:10; 203:12-206:13; 211:5-12; 212:13-213:4.) This evidence establishes that the goodwill write off was improper and thus ILA-DEL had a positive net value which was far greater than $1 on May 30, 2012.

The second adjustment was to remove prepaid barter credits of $228,000 from ILA-DEL's May 30, 2012 balance sheet by returning them to Schneidmill, via Economic Solutions Inc., who had initially contributed $500,000 in 2008. (NYSCEF 532, Dec. 18, 2016 email from Schneidmill to Sorkin at 5.) According to Schneidmill's 2012 K-1 for ILA-DEL, the barter credits were distributed to Schneidmill, via Economic Solutions Inc., in the amount of $228,000. (NYSCEF 524, ILA-DEL US Tax Return.) Schneidmill justified the May 30, 2012 journal entry to Sorkin explaining that barter credits had expired and were worthless. (NYSCEF 532, Dec. 18, 2016 email from Schneidmill to Sorkin at 5, April 12, 2017 email from Schneidmill to Sorkin at 82.) However, at trial Schnedimill admitted that the barter credits expired in August 2013, not prior to May 2012. (NYSCEF 535, Schneidmill Tr at 151:21-25.) On May 30, 2012, the barter credits were listed on ILA-DEL's books and records as having a value of $266,577.25. (NYSCEF 532, Balance Sheet; NYSCEF 535, Schneidmill Tr at 165:11-15.) They had been used by ILA-DEL to pay for catalog production and thus they were not useless. (NYSCEF 530, April 12, 2017 email from Schneidmill to Sorkin at 82.) Schneidmill also admitted that the regular June 30, 2012 barter credit statement showed a balance of $478,135.33, but he insisted the value was zero. (NYSCEF 535, Schneidmill Tr at 177:11-178:20.) Clearly, the unexpired barter credits had value, and the documentary evidence undermines defendants' claim that the value was zero; the value was $266,577.25, at least, based on the most reliable document, the balance sheet. This evidence establishes that the barter credit write off was improper and thus ILA-DEL had a positive net value which was far greater than $1 on May 30, 2012.

The court gives little to no weight to Sorkin's testimony concerning the two 2012 adjustments. While Sorkin's lifelong friendship with Schneidmill raises a flag, Sorkin also had a vested interest in legitimizing the transaction Sorkin crafted in May 2012.

(NYSCEF 531, Sorkin's May 4, 2012 Memo.) Sorkin's contemporaneous emails corroborate his testimony that the adjustments were for the purpose of creating insolvency to benefit defendants and get out from under the debt owed to plaintiffs. (NYSCEF 530, emails at 32, 33, 39, 113, 135, and 136.)

The court rejects defendants' attack on Dubrow's competency. Having proven the amount of their damages, $1,906,000, plaintiffs need only prove that but for ILA-DEL's sale to ILA-NY for $1, ILA-DEL would have had the assets to pay plaintiffs. Plaintiffs demonstrated that ILA-DEL had a positive net value of $2,665,851.75 using defendants' documents; the same documents defendants relied on to show a negative net worth. Accordingly, Dubrow's alleged lack of experience in performing such valuations is irrelevant.

The court found Henry M. Dubrow, CPA credible, reliable, clear, and helpful. The court credited his explanations because he has significant experience with the purchase and sale of businesses. (NYSCEF 535, Dubrow Tr at 71:19-72:17; 77:8-16.) He fully explained why the two adjustments to the May 30, 2012 balance were improper. As to the write-off of $3.5 million in goodwill, Dubrow challenged the adjustment that was not consistent with good and accepted accounting practices because there was no external verification such as an appraisal or offer to purchase. (Id. at 99:21-100:17.) The goodwill adjustment is undermined by the New York State Form AU-196.10, Notification of Sale, Transfer or Assignment in Bulk, the purpose of which is to identify assets subject to sales tax and which is filed by the buyer to eliminate sales tax liability in a related party transaction. (NYSCEF 535, Dubrow Tr at 79:8-81: 5.) Here, the form lists the sales price of the transaction as $2.8 million. (NYSCEF 523, 2012 ILA-DEL NY State Form AU-196-10 at 40/40[8].) The adjustment is also contradicted by a US tax form

---

[8] Page numbers are from NYSCEF.

filed by ILA-DEL in 2012 which lists the sale price as $3.5 million. (NYSCEF 524, Form 8594 at 14/95[9].) These tax filings also undermine the $1 price ILA-NY paid to ILA-DEL. The court rejects defendants' attempt to benefit from these discrepancies between defendants' books and records and tax forms that defendants filed with the IRS and NYS Division of Taxation, by implying the documents are unreliable. Finally, Dubrow was engaged to review the documents related to the 2012 transaction and opine on their propriety. (NYSCEF 535, Dubrow Tr at 72:21-73:2.) His testimony was consistent with his engagement and his report which focused on the two accounting adjustments; his testimony could not possibly come as a surprise to defendants who were given extra time to prepare. (*Id.*; NYSCEF 314, Dubrow Report.)

Finally, defendants ILA-DEL, ILA-NY, Economic Solutions, Inc. and Schneidmill are entitled to a credit for the amount of the settlement by the other defendants to avoid plaintiffs' double recovery. (NYSCEF 529, Tr at 7:17-25; 8:17-9:3) It is undisputed that this confidential amount shall be deducted from the amount of the judgment paid by the remaining defendants. (NYSCEF 529, Plaintiffs' Counsel Tr at 9:1-3.)

Accordingly, it is

ORDERED and ADJUGED Plaintiffs Marvin Sandler, Mimi Berman Sandler and MiMarv, Inc., f/k/a Independent Living Aids, Inc. have judgment and recover on the first cause of action for breach of 2008 Asset Purchase Agreement in the amount of $450,000 against defendant Independent Living Aids LLC (A Delaware LLC) 000 with interest from September 19, 2012; and it is further

ORDERED and ADJUGED Plaintiffs Marvin Sandler and Mimi Berman Sandler, have judgment and recover on the second cause of action for breach of the 2008

---

[9] Page numbers are from NYSCEF.

consulting agreement in the amount of $1,456,000 against defendant Independent Living Aids LLC (A Delaware LLC) with interest from June 1, 2012; and it is further

ORDERED and ADJUGED Plaintiffs Marvin Sandler, Mimi Berman Sandler and MiMarv, Inc., f/k/a Independent Living Aids, Inc., have judgment and recover on the sixth cause of action, jointly and severally against defendants Independent Living Aids LLC (A Delaware LLC), Independent Living Aids LLC (A New York LLC), Economic Solutions, Inc., and Irwin Schneidmill, in the amount of $1,906,000 with interest from June 1, 2012; and it is further

ORDERED that plaintiffs are directed to submit a proposed judgment to the Clerk of the Court with the above order language.

December 30, 2021
DATE

ANDREA MASLEY, J.S.C.

| CHECK ONE: | x | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | x | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |