| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP** | **Hearing Date:**   **November 8, 2022 at 10:30 am** |
| 3305 Jerusalem Avenue, Suite 201 | **Objections Due:**   **November 1, 2022 by 10:30 a.m.** |
| Wantagh, New York 11793 | |
| Telephone: (516) 826-6500 | |
| Joseph S. Maniscalco, Esq. | |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re:                                                                    Chapter 7

      IRWIN SCHNEIDMILL,                          Case No. 22-71158 (AST)

                  Debtor.

---------------------------------------------------------------X

MARVIN SANDLER, MIMI BERMAN SANDLER
and MIMARV, INC. F/K/A INDEPENDENT
LIVING AIDS, INC.,                                                Adv. Pro. No. 22-08060 (AST)

              Plaintiffs,

    -against-

IRWIN SCHNEIDMILL,

              Defendant.

---------------------------------------------------------------X

## NOTICE OF DEFENDANT'S MOTION SEEKING THE ENTRY OF AN ORDER PURSUANT TO RULE 12(b)(6) DISMISSING THE COMPLAINT

      **PLEASE TAKE NOTICE** that, on <u>**November 8, 2022 at 10:30 a.m.**</u>, or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Alan S. Trust, Chief United States Bankruptcy Judge, Eastern District of New York, to consider the motion of Irwin Schneidmill ("<u>Debtor</u>" or "<u>Defendant</u>"), by his undersigned counsel, seeking entry of an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) as made applicable to this adversary proceeding by Bankruptcy Rule 7012 dismissing the First, Second and Third Claim for Relief for failure to state a claim for which relief can be granted, and/or Rule 9(b) as made applicable to this adversary proceeding by Bankruptcy Rule 7009 for failure to plead fraud with specificity, and granting such other and further relief as this Court deems just and proper ("<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE,** that any party that wishes to participate at the Hearing must register with eCourt Appearances two (2) business days in advance of the Hearing. Instructions and the link to register using eCourt Appearances may be found here: https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances. See Chief Judge Alan S. Trust's Chambers page on the Court website for further information at: https://www.nyeb.uscourts.gov/content/chief-judge-alan-s-trust.

**PLEASE TAKE FURTHER NOTICE** that objections to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and Bankruptcy Rules, state with particularity the grounds therefor and be filed with the Court, with a courtesy copy to the Chambers of the Honorable Alan S. Trust, Chief United States Bankruptcy Judge, and served upon, so as to be received by, LaMonica Herbst & Maniscalco, LLP, counsel to the Debtor, Attn: Joseph S. Maniscalco, Esq., no later than **November 1, 2022 by 10:30 a.m.**, as follows: (i) through the Bankruptcy Court's electronic filing system (in accordance with Order No. 473), which may be accessed through the internet at the Bankruptcy Court's website at www.nyeb.uscourts.gov, and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

Dated: October 3, 2022
      Wantagh, New York

               **LAMONICA HERBST & MANISCALCO, LLP**
               Counsel to Debtor/Defendant

         By:    *s/ Joseph S. Maniscalco*
               Joseph S. Maniscalco, Esq.
               3305 Jerusalem Avenue
               Wantagh, New York 11793
               Telephone: (516) 826-6500

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.

**Hearing Date:**   **November 8, 2022 at 10:30 am**
**Objections Due:**   **November 1, 2022 by 10:30 a.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                                      Chapter 7

     IRWIN SCHNEIDMILL,                              Case No. 22-71158 (AST)

              Debtor.
-----------------------------------------------------------------X

MARVIN SANDLER, MIMI BERMAN SANDLER
and MIMARV, INC. F/K/A INDEPENDENT
LIVING AIDS, INC.,                                               Adv. Pro. No. 22-08060 (AST)

             Plaintiffs,

    -against-

IRWIN SCHNEIDMILL,

             Defendant.
-----------------------------------------------------------------X

## DEFENDANT'S MOTION SEEKING THE ENTRY OF
## AN ORDER PURSUANT TO RULE 12(b)(6) DISMISSING THE COMPLAINT

Defendant Irwin Schneidmill ("Debtor" or "Defendant"), by his undersigned counsel,

seeks entry of an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures as made

applicable to this adversary proceeding by Bankruptcy Rule 7012 dismissing the First, Second and

Third Claim for Relief in the above referenced action filed by Marvin Sandler, Mimi Berman

Sandler and Mimarv, Inc. f/k/a Independent Living Aids, Inc. (collectively, "Plaintiffs") for failure

to state a claim for which relief may be granted, and/or Rule 9(b) as made applicable to this

adversary proceeding by Bankruptcy Rule 7009 for failure to plead fraud with specificity, and

granting such other and further relief as this Court deems just and proper ("Motion").

## PRELIMINARY STATEMENT

In this case, Plaintiffs obtained a judgment in state court related to an alleged fraudulent conveyance of assets of one business entity to another.  Plaintiffs' entire complaint is grounded in the decision and order of the state court judge on cross-motions for summary judgment.  In connection with the decision, the state court granted, in part, and denied, in part, different claims for relief.[1] Plaintiffs entire reliance is misplaced and a reading of the decision reveals that the defendant Debtor should be discharged of the debt to the Plaintiffs as interpreted under section 523 of the United States Code ( "Bankruptcy Code").  The Defendant never had any direct or indirect monetary obligation to Plaintiffs. Plaintiffs' contract was between their corporate entity and that of another corporate entity. Plaintiffs sold all of their assets of their company and received all of the purchase price at closing. Plaintiffs also received approximately 60% of their future consulting agreement fees. Unfortunately, the corporate purchaser of the business, years later, could not sustain itself as a viable entity.

In its complaint objecting to the dischargeability of debt generally under § 523(a)(2)(4) and (6) of the Bankruptcy Code, Plaintiffs claim that the state court made affirmative findings against the Debtor. It did not. There is nothing in the record to support such a conclusion and reading language into the decision that does not exist will not correct this defect for the Plaintiffs.

Finally, Plaintiffs have simplistically alleged each and every element of section 523(a)(2), (4), and (6).  It has not identified precisely which subpart of any of those sections of 523 apply. It has alleged fraud generally and in violation of Federal Rule 9(b). Therefore, if the complaint is sustained, which it should not be, Plaintiffs should be required to allege fraud with specificity.

---

[1]    The state court decision is on appeal.

## BACKGROUND

1.      On May 20, 2022 (the "Filing Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the Bankruptcy Code, along with the required schedules ("Schedules"), in the United States Bankruptcy Court for the Eastern District of New York ("Court").

2.      Kenneth P. Silverman was appointed as the Chapter 7 Trustee ("Trustee").

3.      On June 14, 2019, the United States Trustee examined the Debtor at his meeting of creditors pursuant to section 341 of the Bankruptcy Code ("First 341 Meeting").  The First 341 Meeting was closed.

4.      On August 11, 2022, Plaintiffs filed a summons and complaint with this Court seeking, *inter alia*, the entry of an order generally denying the Debtor a discharge of Plaintiffs' claims under section 523(a)(4) and (6) ("Complaint").  A copy of the Complaint with its exhibits is annexed hereto as **Exhibit A**.

5.      By Order entered August 17, 2022, the Court issued the Debtor a discharge.

## PURCHASE AND SALE OF THE BUSINESS

A.      **The Sale of Assets to the Buyer in 2018**

6.      In or about May 23, 2018, Independent Living Aids, Inc. ("ILA Inc." or the "Seller") entered into an asset purchase agreement for all of the assets of ILA Inc. to a newly formed entity known as ILA-DE ("Buyer") for $8,000,000 (MM) ("APA") ("Purchase Price").

7.      At the same time, the Seller, Buyer and Plaintiffs entered into a separate consulting agreement pursuant to which Marvin and Mimi Sandler (collectively "Sandlers") would continue to advise ILA-DE on the operation of the company under a consulting agreement in exchange for

$2,424,000 (MM), to be paid in monthly installments over a period of seven (7) years at $28,857.14 per month ("Consulting Agreement").

8.      Under the Consulting Agreement, if ILA-DE, the Buyer, ever underwent a change in control, including a sale of "all or substantially all of the assets related to the business", the Consulting Agreement's acceleration clause would be triggered which provided for an automatic termination of the Consulting Agreement and payment of the remaining balance to the Sandlers at a discounted  rate of 5% per annum.

9.      In order to finance the Purchase Price under the APA, ILA-DE took out a traditional bank loan from TD Bank, N.A. ("TD Bank"). To close on the loan, TD Bank required cash collateral in the amount of $450,000.  In order to close on the deal, the Sandlers agreed to allow TD Bank to retain $450,000 as cash collateral, thereby reducing the Purchase Price received by the Sandlers at closing to $7,550,000 (MM). At closing, the Buyer paid the Seller $7,550,000 (MM) and the Buyer acquired all right title and interest in and to the assets of the Seller under the APA.

10.     Under the Consulting Agreement, the Buyer had an obligation to pay the Sandlers individually $2,424,000(MM) based on their own performance and assistance with the Buyer on a going forward basis to further sustain the business.

11.     Three years later, in or about 2011, the Buyer (ILA-DE) experienced financial difficulties in sustaining the business.  As a result of those difficulties, ILA-DE entered into a one (1) year extension on the loan with TD Bank, and informed the Sandlers that ILA-DE would be unable to make further payments under the Consulting Agreement as of January 2012.  During these financially difficult times, the Sandlers had knowledge of the finances, the challenges the Buyer was having, and were fully aware of the reasons for the financial difficulties and downturn

in the business.  The downturn of the business and revenues continued to deteriorate into the year 2012 and the investors of ILA-DE refused to further invest in the company.

**B.**      **The Asset Purchase Sale from ILA-DE to a New Entity**

12.      On June 1, 2012, ILA-DE entered into an asset purchase agreement with a new entity called ILA-NY whereby ILA-NY purchased all of the assets of ILA-DE for $1 ("ILA Transaction").  As part of the ILA Transaction, ILA-NY assumed the obligations with TD Bank, including Plaintiffs' collateral being held in the cash collateral pledge account.  At the time of the ILA Transaction, the Plaintiffs were fully aware of the financial difficulties as well as the transfer of assets to the new entity. In fact, the Sandlers were offered an opportunity to invest in ILA-DE or be a part of the future of the Company. The Sandlers declined.

13.      In view of continued financial difficulties, on September 18, 2012, ILA-NY entered into a modification agreement with TD Bank pursuant to which Irwin Schneidmill (the Debtor herein) provided a personal guaranty as additional security for the TD Bank loan, and agreed to release the cash collateral to TD Bank to be applied against the original TD Bank loan.

14.      Eventually, despite the Debtor's efforts and infusion of additional capital, the business was unable to sustain itself and TD Bank defaulted ILA-NY. In connection with the default, TD Bank foreclosed against the ILA-NY's assets and the company closed.

**THE STATE COURT ACTION**

**A.**      **Plaintiffs Commence a State Court Action**

15.      Over a year after the ILA Transaction, on June 18, 2013, Plaintiffs commenced an action in the Supreme Court of the State of New York, County of New York under Index No. 652154-2013 entitled Marvin Sandler, and Mimi Sandler and Mimarv, Inc. f/k/a Independent Living Aids, Inc. v. Independent Living Aids, LLC (a New York LLC), Independent Living Aids

LLC (a Delaware LLC), RSS Adventure Capital, LLC, The Chow/Speech Trust, Economic Solutions, Inc., Matthew Sheppard, Prince John Radziwill and Irwin Schneidmill ("State Court Action").

16.     The State Court Action lingered on for over seven (7) years in discovery, releases of other initially named defendants, and other factors.

17.     On August 28, 2020, the state court issued a Memorandum Decision and Order granting summary judgment on certain claims for relief and dismissing other claims for relief in that action ("Decision").  The Decision is attached to Plaintiffs' Complaint as Exhibit 1 and hereto as **Exhibit B**.

18.     One year later, the state court held an inquest on damages and by Decision and Order dated December 30, 2021 ("Damages Decision"), found, as to the Debtor herein, as follows:

> ORDERED and ADJUDGED Plaintiffs Marvin Sandler, Mimi Berman Sandler and MiMarv, Inc., f/k/a Independent Living Aids, Inc. have judgment and recover on the sixth cause of action, jointly and severally against Defendants Independent Living Aids LLC (a Delaware, LLC), Independent Living Aids LLC (a New York LLC), Economic Solutions, Inc. and Irwin Schneidmill in the amount $1,906,000 with interest from June 1, 2012.

19.     There are no findings in the Decision or the Damages Decision related to fraud on the part of the Debtor or anything related to improper actions of the individual Debtor. The Damages Decision is silent and merely awards damages to the Seller and lists the Debtor in the damages calculation. The Damages Decision only cites to the sixth cause of action in the state court complaint and dismisses all other claims against the Debtor.

20.     In reviewing the underlying state court complaint, the sixth cause of action  asserts a fraudulent conveyance under section 273 under the New York Debtor and Creditor Law.  While Plaintiffs filed claims against the Defendants for a host of reasons including allegations of fraud,

violations of Debtor and Creditor Law sections 273, 274, 275 and 276, piercing the corporate veil and others, the state court dismissed each and every claim for relief against the Debtor/Defendant herein except granted summary judgment on the sixth cause of action for the fraudulent conveyance claim under section 273 of the New York Debtor and Creditor Law.

## POINT I

## LEGAL ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

21.     To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requires that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (*quoting* Twombly, 550 U.S. at 556). Put differently; the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal citations omitted). While a court on a motion to dismiss must accept all factual allegations in the complaint as true and draw all inferences in plaintiff's favor, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'" Iqbal, 556 U.S. at 678 (*citing* Twombly, 550 U.S. at 556). The factual allegations, however, must be well-pleaded.

22.     In resolving a Rule 12(b)(6) motion, the court may consider "documents attached to the complaint as exhibits, or incorporated in it by reference, to matters of which judicial notice may be taken or to documents on which the plaintiff relied in bringing suit." Mosello v. Ali Inc., (In re Mosello), 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995) *aff'd.,* 193 B.R. 174 (S.D.N.Y. 1996).

23.     In the context of allegations of fraud, the court may also dismiss a complaint if the plaintiff fails to meet the pleading requirements of Rule 9(b). See <u>Sullivan v. Kodsi</u>, 373 F. Supp. 2d 302, 305 (S.D.N.Y. 2005).  There is no doubt the Plaintiffs have failed to meet this burden as well in attempting to except from discharge the debt the Debtor/Defendant has to the Plaintiffs.

24.     The Complaint must also satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. These requirements are now well established as the two "working principles" set forth in the <u>Iqbal</u>/<u>Twombly</u> analysis. <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). Under the first principle, a court does not consider the allegations in a complaint that are "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Iqbal</u>, 566 U.S. 662, 678 (2009); <u>See</u> <u>also</u> <u>Twombly</u>, 550 U.S. 544, 555 (2007). ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulative recitation of the elements of a cause of action will not do.")  Here, Plaintiffs merely relies on the state court Decision and assert every conceivable section of 523(a)(2),(4), and (6) and all subparts thereof without specifying which actual section of 523 applies, and that bare conclusory legal statement is insufficient. <u>Id</u>.; <u>See</u> Complaint, <u>Exhibit A</u>. There are no other factual allegations in the Complaint about alleged misrepresentations, fraud or anything to support a finding under § 523(a)(2),(4) or (6) of the Bankrutpcy Code against the Debtor.

25.     Second, the Court must determine whether the remaining allegations state a "plausible" claim for relief.  <u>Iqbal</u>, 556 U.S. at 679.  A "reviewing court . . . draw[s] on its judicial experience and common sense" to undertake this "context-specific task."  <u>Id</u>.  Where "obvious alternative explanations" for the allegations exist, in light of industry history and the "considered

views of leading commentators," Twombly, 550 U.S. at 567, it is less likely that a court can "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint cannot merely plead facts that are "consistent with" a defendant's liability but that "stop short of the line between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown that the pleader is entitled to relief." Iqbal, 556 U.S. at 679.

26.    Of particular relevance here is Twombly's admonition that district courts should identify deficiencies in a complaint "at the point of minimum expenditure of time and money by the parties and the court." 550 U.S. at 558 (internal quotation marks omitted). Here, Plaintiffs' Complaint abjectly fails to properly assert a claim for relief and ignores the plausibility principles articulated by the Supreme Court. The Plaintiffs have not specified the subparts or precise elements of section 523 of the Bankrutpcy Code that are applicable, and do not offer any other specific allegations aside from a reference to the underlying state court Decision. That Decision relates to a myriad of different factors and claims, most of which were all dismissed by the state court, and do not provide a proper framework for this Court or the Debtor to decipher in defending the claims.

27.    Similar to the fact that there are no specific allegations sounding in fraud against the Debtor, there are no allegations as to how, when, where and the like, these representations were made by the Debtor to the Plaintiffs. In short, the Complaint is rife with conclusory allegations consistent only with the elements that the Plaintiffs must satisfy. This utterly fails to meet the strict requirements set forth in Iqbal/Twombly as well as Rule 9(b) of the Federal Rules of Civil Procedure as no factual predicate is set forth by Plaintiffs and the Complaint fails to cross

over the line to even conceivable, much less plausible.

28.     Plaintiffs assert simplistically and singularly, only through an assertion that the state court said this or the state court said that without providing any specific quote of language as it relates to the Debtor's conduct, leaving it up to the Debtor/Defendant and the Court to read each and every line of a 48 page opinion to figure out what Plaintiffs believe are grounds to except from discharge. There is no other allegation in the entire Complaint about the Debtor's alleged behavior or how that behavior is such that he should not be entitled to a discharge.

29.     In the pleading, the Court must look to the factual allegations that form the underlying basis for a claim and determine whether a plausible claim has been pled. See Iqbal, 566 U.S. 662, 678 (2009); See also Twombly, 550 U.S. 544, 555 (2007).   Plaintiffs are short of providing a complaint that succinctly identifies the asserted claims and the basis for those claims.

## POINT II

## THE SECTION 523 CLAIMS CANNOT BE SUSTAINED

30.     In the instant case, the Plaintiffs seek a determination that the debt owed to them by Debtor as set for in the Damages Decision should not be discharged pursuant to section 523(a)(2) of the Bankruptcy Code.  Section 523(a)(2)(A) provides "[A] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition.

31.     Section 523(a)(2) contains the two specific exceptions to dischargeability in bankruptcy for debts traceable to falsity or fraud or to a materially false financial statement. Field v. Mans, 516 U.S. 59, 64 (1995).  These exceptions reflect Congress' desire to cabin

dischargeability to the so-called honest debtor such that certain debts incurred, for example, by fraud are not dischargeable in bankruptcy.  In re Bogdanovich, 292 F.3d 104, 107 (2d Cir. 2002).

32.     The first exception, section 523(a)(2)(A), is for debt obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.   The operative terms in section 523(a)(2)(A), false pretenses, a false representation, or actual fraud, carry the acquired meaning of terms of art.  They are common-law terms and they imply elements that the common law has defined them to include.  Field v. Mans, 516 U.S. at 69.  As far as their basic elements are concerned, claims based on these terms have no significant difference; importantly for this action, any such claims require some form of reliance. Baranek v. Baranek, 2013 U.S. Dist. LEXIS 129722, * 17 (E.D.N.Y. 2013).

33.     In order to sustain their burden in obtaining a favorable determination, the Plaintiffs must prove (1) the debtor made a representation; (2) he knew the representation was false; (3) he intended to deceive the creditor; (4) the creditor relied on the representation; and (5) his reliance was the proximate cause of his damage.  Fellows, Read & Assocs., Inc. v. Reider, 194 B.R. 734, 737 (S.D.N.Y. 1996).  There are no allegations in the Complaint to sustain these elements as none of this occurred.  Within the fraud exceptions to discharge, the element most often litigated is reliance - - i.e., the extent to which the creditor changed position based on the debtor's misrepresentation.  Baranek v. Baranek, 2013 U.S. Dist. LEXIS at *18. Here, Plaintiffs have barely alleged anything.  Instead, they simply rely on the state court Decision and direct the Debtor/Defendant and the Court to figure out through the state court Decision where there was a finding that fits within section 523.  In reviewing the state court Decision, there is no finding that the Debtor engaged in any conduct that would except from discharge the debt he has to the Plaintiffs under section 523(a)(2)(A).

34.    In the context of allegations of fraud, the court may also dismiss a complaint if the plaintiff fails to meet the pleading requirements of Rule 9(b).  <u>Sullivan v. Kodsi</u>, 373 F. Supp. 2d 302, 305 (S.D.N.Y. 2005).  There is no doubt the Plaintiffs have failed to meet this burden as well in attempting to except from discharge the debt the Debtor defendant has to the Plaintiffs.

A.    <u>**The Standard of Section 523(a) of the Bankruptcy Code**</u>

35.    "An action under §523 of the Bankruptcy Code results in a specific debt being deemed non-dischargeable in the debtor's bankruptcy, if the creditor successfully meets his or her burden." <u>Argento v. Cahill (In re Cahill)</u>, 2017 Bankr. LEXIS 501, *13 (Bankr. E.D.N.Y. 2017); <u>see also</u> 11 U.S.C. §523. "The creditor has the burden of proving the elements of a §523(a) claim in order to have his debt deemed non-dischargeable as against the debtor." <u>Id</u>. *citing* <u>Sarasota CCM, Inc. v. Kuncman</u>, 466 B.R. 590, 595 (E.D.N.Y. 2012). "The Bankruptcy Code's fresh start objective requires any fraud exception to dischargeability to be construed strictly against the creditor and liberally in favor of the debtor. <u>Id</u>.

36.    "Section 523(a)(2)(A) [of the Bankruptcy Code] excepts from the general discharge any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by. . . false pretenses, a false representation, or actual fraud." <u>United States v. Fusion Connect, Inc. (In re Fusion Connect, Inc.)</u>, 617 B.R. 36, 40 (Bankr. S.D.N.Y. 2020). "A party can satisfy the elements of § 523(a)(2)(A) by establishing only one of the three types of fraud." <u>Brennan v. Hall (In re Hall)</u>, 2022 Bankr. LEXIS 2635, *23 (N.D.N.Y. 2022). Since each type of fraud enumerated in section 523(a)(2) has its own meaning, each type must be analyzed in accordance with the facts of a particular case. <u>Id</u>.

### (i) *Claims Under False Pretenses*

37.     "False pretenses differ from false representations because they involve conduct, not express oral or written misrepresentation." <u>Zhong Xin v. Heng Li Zhu (In re Heng Li Zhu)</u>, 2022 Bankr. LEXIS 2239, \*50 (Bankr. S.D.N.Y. 2022). "False pretenses can consist of either conscious deceptive or misleading conduct calculated to obtain, or deprive another of property, or an implied misrepresentation or conduct intended to create a false impression." <u>Id</u>.

38.     "To state a claim under section 523(a)(2)(A) that [a debt] is nondischargeable as a debt for money obtained by false pretenses, the [plaintiff] must allege facts demonstrating (1) an implied misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant." <u>Id</u>. *citing* <u>Lubit v. Chase (In re Chase)</u>, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007). In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim for false pretenses.

### (ii) *Claims for False Representation*

39.     "For purposes of applying section 523(a)(2)(A), a false representation means that (1) the defendant made a false or misleading statement (2) with the intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant." <u>Parklex Assocs. v. Deutsch (In re Deutsch)</u>, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017). "Omissions of fact can qualify as false representations." <u>Id</u>. In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim for False Representation.

*(iii)*    ***Claims for Actual Fraud***

40.    "While 'actual fraud' under section 523(a)(2)(A) is not always easy to define, <u>Field v. Mans</u>[2] and <u>Husky</u>[3] make clear that it is tethered to the common law concept of fraud." <u>United States v. Fusion Connect, Inc. (In re Fusion Connect, Inc.)</u>, 617 B.R. 36, 40 (Bankr. S.D.N.Y. 2020). <u>Husky</u> is a particularly instructive case with how courts should interpret Bankruptcy Code section 523(a) and the term "actual fraud". The facts in <u>Husky</u> are as follows:

41.    Husky was a Colorado-based supplier of components for electronic devices. Husky sold products to Chrysalis Manufacturing ("<u>Chrysalis</u>"), a company directed and 30% owned by Daniel L. Ritz ("<u>Ritz</u>"). Chrysalis incurred approximately $164,000 in debts owed to Husky. Ritz subsequently drained Chrysalis of its assets, which could have been used to pay off the debts owed to Husky, and transferred those assets to other Ritz-owned corporations. Husky sued Ritz seeking to hold him personally liable for the debts owed to Husky. Husky's argument was that the inter-company transfers were "actual fraud."

42.    Ritz filed for Chapter 7 bankruptcy; Husky initiated an adversary proceeding against Ritz again seeking to hold Ritz personally liable for the debts **and** objecting to Ritz's discharge of those debts pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6)[4]. The District Court held that Ritz was personally liable for the debts owed to Husky, but that the debt was not obtained by

---

[2]    "The operative terms in § 523(a)(2)(A), on the other hand, 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art. They are common law terms, and, as we will shortly see in the case of 'actual fraud,' which concerns us here, they imply elements that the common law has defined them to include." <u>Field v. Mans</u>, 116 S.Ct. 437, 443 (1995).

[3]    "This Court has historically construed the terms in § 523(a)(2)(A) to contain 'the elements that the common law has defined them to include.' 'Actual fraud' has two parts: actual and fraud. The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involves moral turpitude or intentional wrong.'. . Thus, anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" <u>Husky Int'l Elecs., Inc. v. Ritz</u>, 136 S.Ct. 1581, 1586 (2016).

[4]    The Court's decision did not delve into the analysis/interpretation of Bankruptcy Code §§ 523(a)(4) or (6).

"actual fraud" under 11 USC § 523(a)(2) and could be discharged in his bankruptcy. The Fifth Circuit affirmed.

43.     However, the Supreme Court reversed the Fifth Circuit's decision holding that "actual fraud in 11 USC § 523(a)(2) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." 136 S.Ct. 1581, 1586 (2016). In fact, the Supreme Court expressly stated that "the phrase [actual fraud] has long encompassed the kind of conduct alleged to have occurred here: a transfer scheme designed to hinder the collection of a debt." Id. The Supreme Court states that the "fraudulent conduct is not in dishonesty inducing a creditor to extend a debt. It is in the acts of concealment and hinderance." Id.

44.     In Husky it was undisputed on the facts that the defendant squandered with the money from the company for his personal benefit.  None of those allegations are contained in Plaintiffs' Complaint and the Debtor never received any benefit from the business aside from his working salary. In fact, it is undisputed that Debtor/Defendant advised the Plaintiffs of the financial challenges. There is no evidence of "acts of concealment and hinderance." The Plaintiffs had a Consulting Agreement and were consulting each month with knowledge of the business finances. There are no allegation against the Debtor that he concealed or fraudulent conveyed any of the assets of ILA-DE to himself personally to the detriment of Plaintiffs.

45.     The Supreme Court had a strong dissent delivered by Justice Thomas. In the dissent, Justice Thomas avers that "actual fraud" under Bankruptcy Code section 523(a)(2) does not encompass fraudulent schemes. Justice Thomas interprets the statutory language of Bankruptcy Code section 523(a)(2) to mean that actual fraud "covers only those situations in which some sort of fraudulent conduct caused the creditor to enter into a transaction with the debtor" 136 S.Ct. 1581 at 1591 (2016). Justice Thomas continues by stating that "the fraudulent transfer here, like

all but the rarest fraudulent transfers, did not trick the creditor into selling his goods to the buyer, Chrysalis. It follows that the goods that resulted in the debt here were not 'obtained' by actual fraud." <u>Id</u>.

46.     Not only does <u>Husky</u> not apply as the facts are completely different, again, Plaintiffs fail to articulate their claims of actual fraud and the construct of the Supreme Court is identifying fraudulent concealment did not occur. Here, there is no actual fraud and Plaintiffs cannot sustain a claim for actual fraud. The Complaint is silent. The facts are silent and there is nothing in the record to rely on which would point to an assertion or conclusion that the Debtor engaged in any actual fraud.

**B.      Interpretation of Bankruptcy Code Section 523(a)(4)**

47.     "Nondischargeability under § 523(a)(4) requires a showing that the debt at issue was obtained by (i) fraud or defalcation while acting in a fiduciary capacity, (ii) embezzlement, or (iii) larceny." <u>In re Kakareko</u>, 575 B.R. 12, 17 (Bankr. E.D.N.Y. 2017); 11 U.S.C. § 523(a)(4). "To prevail on a claim that a debt is nondischargeable under § 523(a)(4) by reason of defalcation while acting in a fiduciary capacity, a plaintiff must prove three elements – 'first, that the debt was incurred in connection with an express or technical trust, second that the debtor acted in a fiduciary capacity with respect to that trust, and third, that the debtor engaged in fraud or a defalcation within the meaning of the bankruptcy law.'" 575 B.R. 12 at 21 (Bankr. E.D.N.Y. 2017). Courts should address each of these elements in turn. <u>Id</u>.

*(i)     **Claims Asserting Express or Technical Trust***

48.     "An express trust is initiated by one entity's transfer of property to another entity coupled with a manifestation of intention to create a trust." <u>In re Kakareko</u>, 575 B.R. 12, 21 (Bankr.

E.D.N.Y. 2017). "Courts have extended § 523(a)(4) to relationships in which technical trust type obligations are imposed pursuant to statute[5] or common law." Id.

49.    In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim for violations of a trust.

### *(ii)*    ***Claims Asserting Fiduciary Capacity***

50.    "Fiduciary capacity is not defined in the Bankruptcy Code. The meaning of fiduciary capacity is determined by federal law." In re Kakareko, 575 B.R. 12, 25-26 (Bankr. E.D.N.Y. 2017). "The term 'fiduciary' under §523(a)(4) is to be narrowly construed so that it does not include mere debtor-creditor relationships in which the debtor violated the terms of a purely commercial agreement." 575 B.R. 12 at 26 (Bankr. E.D.N.Y. 2017). In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim against the Debtor for a violation of this fiduciary capacity.

### *(iii)*    ***Claims Asserting Defalcation***

51.    "Defalcation includes a culpable state of mind requirement or one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." In re Kakareko, 575 B.R. 12 at 26 (Bankr. E.D.N.Y. 2017) *citing* Bullock v. BankChampaign, N.A., 133 S.Ct. 1754 (2013). In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim against the Debtor for defalcation.

---

[5]    Where the basis of existence of a technical trust is statutory, the statute must (i) define the trust res; (ii) identify the fiduciary's obligations; and (iii) impose fiduciary obligations prior to and without reference to the alleged wrongdoing that created the debt.

## C.    Interpretation of Bankruptcy Code section 523(a)(6)

52.    "Bankruptcy Code section 523(a)(6) permits a creditor that has been injured by a debtor's willful and malicious act to exclude the resulting debt from the debtor's discharge." VW Credit, Inc. v. Salim (In re Salim), 2015 Bankr. LEXIS 815, *63 (Bankr. E.D.N.Y. 2015). "In order to establish that a debt should not be discharged under section 523(a)(6), the creditor must show that the debt at issues resulted from a willful and malicious injury by the debtor to another entity or to the property of another entity." Id.

### (i)    Willful Conduct

53.    In the context of Bankruptcy Code section 523(a)(6), willful means deliberate and intentional. See Navistar Fin. Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 87 (2d Cir. 1996); see also VW Credit, Inc. v. Salim (In re Salim), 2015 Bankr. LEXIS 815, *64 (Bankr. E.D.N.Y. 2015). "[W]illful in section 523(a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 2015 Bankr. LEXIS 815, *64 (Bankr. E.D.N.Y. 2015).

### (ii)    Malicious Conduct

54.    "As defined by the Second Circuit, malice in this context encompasses both actual and constructive malice and 'means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill will." 2015 Bankr. LEXIS 815, *64 (Bankr. E.D.N.Y. 2015) citing Stelluti, 94 F.3d 84 at 87-88 (2d Cir. 1996). "[A] simple breach of contract, without more, is not sufficient to satisfy the malice element of a section 523(a)(6)."  2015 Bankr. LEXIS 815, *67 (Bankr. E.D.N.Y. 2015).

### (iii)    Willful and Malicious Actions Caused Injury

55.    "The conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable." 2015 Bankr. LEXIS 815, *71 (Bankr. E.D.N.Y.

2015); *citing* <u>Yash Raj Films (USA) v. Ahmed (In re Ahmed)</u>, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005). In this case, not only did Plaintiffs fail to plead any of these elements, but Plaintiffs' Complaint has not even articulated facts that would be applied to a claim against the Debtor for willful and malicious action causing injury.

<u>**POINT III**</u>

<u>**DISMISSAL PURSUANT TO RULE 7009(b)**</u>

56.    Rule 7009(b) provides, "[I]n alleging fraud or mistake, a party may state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and  other conditions of a person's mind may be alleged generally". Certain matters require more specific pleading. Federal Rule 9(b), applicable to  adversary proceedings through Bankruptcy Rule 7009, requires a party alleging fraud to state the   circumstances constituting fraud with particularity. Federal Rule 9(b) is an exception to the  simplified standard of Rule 8(a). <u>See</u> *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002).

57.    To satisfy the first part of Rule 9(b), the pleading must set forth the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation. <u>See</u> *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51-52 (2d Cir. 1995). Rule 9(b) serves three purposes: (1) to provide a defendant with fair notice of plaintiff's claims to enable preparation of his defense; (2) to protect a defendant from harm to his reputation or goodwill; and (3) to reduce the number of strike suits. <u>See</u> <u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987). In light of these purposes, the more relaxed requirement of the second part of Rule 9(b), that state of mind can be "averred generally," must not be mistaken for a "license to base claims of fraud on speculation and conclusory allegations." <u>See</u> *Acito* 47 F.3d at  52 (*citing*

Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)). Accordingly,  "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Id.

58.     In the instant case, Plaintiffs' Complaint is completely silent as to the requirements set forth under Rule 9(b), and thus the Complaint must be dismissed.

## **CONCLUSION**

59.     In conclusion, Plaintiffs have failed to set forth a legal cognizable claim and, as a result, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 7012(b)(6) of the Bankruptcy Rules. In the alternative, if the Court determines that the Complaint is sufficient to survive a motion to dismiss pursuant to Rule 7012(b)(6), the Complaint must be dismissed for its failure to allege fraud with the requisite specificity as provided for by Rule 9(b) and Rule 7009(b) of the Bankruptcy Rules.

60.     In the event that the Court does not grant the requested relief herein, the Defendant reserves his right to file an answer to the Complaint, with affirmative defenses. See Fed. R. Civ. P. 12(a)(4). ("Rule 12(a)(4)") provides that the service of a motion pursuant to Rule 12 suspends the movant's time to file a responsive pleading until 10 days following the disposition of the motion.  Interpreting that rule, courts have held that filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion. Gortat v Capala Bros., 257 FRD 353, 366 (E.D.N.Y. 2009)(citing Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247, 249-50 (W.D.N.Y. 1998)).

61.     No previous application has been made for the relief requested herein.

**WHEREFORE**, for the reasons set forth herein, the relief requested in this Motion should be granted, and an Order entered: (a) pursuant to Federal Rule of Civil Procedure (12)(b)(6) dismissing the First, Second and Third Claim for Relief, or in the alternative pursuant to Federal Rule of Civil Procedure 9(b) dismissing the First, Second and Third Claim for Relief; and (b) granting Defendant such other and further relief as the Court deems just and proper.

Dated: October 3, 2022
      Wantagh, New York

                    **LAMONICA HERBST & MANISCALCO, LLP**
                    Counsel to Debtor/Defendant

By:    *s/ Joseph S. Maniscalco*
           Joseph S. Maniscalco, Esq.
           3305 Jerusalem Avenue
           Wantagh, New York 11793
           Telephone: (516) 826-6500